# Exhibit A

# MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP
# LIMITED PARTNERSHIP AGREEMENT

THIS LIMITED PARTNERSHIP AGREEMENT entered into effective the 28th day of September, 1994, by and among Taylor Sports Group, Inc., a Minnesota corporation (the "General Partner"), and Taylor Corporation, a Minnesota corporation, and such other Persons who hereafter execute this Agreement as Limited Partners (the "Limited Partners").

## ARTICLE I
## DEFINITIONS

The following terms as used in this Agreement shall have the following meanings:

1.1     Act. "Act" means the 1976 Uniform Limited Partnership Act, as amended, as codified in Minnesota Statutes Chapter 322A.

1.2     Affiliate. "Affiliate," with respect to any Person, means (i) any Person directly or indirectly controlling, controlled by, or under common control with such other Person, (ii) any Person owning or controlling 10% or more of the outstanding voting securities of such other Person, and (iii) any officer, director, or partner of such Person.  Unless otherwise specified herein Affiliate, as used herein, shall refer to an Affiliate of the General Partner.

1.3     Agreement. "Agreement" means this Limited Partnership Agreement, including any and all Exhibits and Schedules, and any amendment or supplement hereto.

1.4     Bankruptcy. "Bankruptcy" means (i) the filing of a voluntary petition under any federal or state bankruptcy law, receivership law, or similar law providing for protection from creditors, (ii) the filing of an involuntary petition under any such law that is not dismissed within sixty (60) days, (iii) any general assignment for the benefit of creditors, or (iv) the written admission of the inability to pay debts as they come due.

1.5     Capital Account. "Capital Account," as to any Partner, means the Capital Account established and maintained for such Partner pursuant to Article VI.

1.6     Capital Call. "Capital Call" has the meaning set forth in Section 5.2.

1.7     Capital Contribution. "Capital Contribution" means the total amount of money and/or the agreed upon fair market value of property contributed to the Partnership by any Partner or all of the Partners in the aggregate (including contributions by predecessor Partners in the event of any Transfer).

1.8     Closing Date. "Closing Date" means the date on which the Partnership closes its purchase of the Franchise, Team, and related business, or interests therein, from Minnesota Professional Basketball Limited Partnership.

1.9    Code. "Code" means the Internal Revenue Code of 1986, as amended. Any reference to a Code section herein shall be to that section as it now exists and to any successor provision.

1.10    Franchise. "Franchise" means the rights granted by the NBA to own and operate the professional basketball team known, at the time of this Agreement, as the "Minnesota Timberwolves," together with all other assets and rights, contractual or otherwise, related thereto.

1.11    General Partner. "General Partner" means Taylor Sports Group, Inc., any Person who becomes a substitute General Partner as provided herein, and any Person admitted to the Partnership as a General Partner, in such Person's capacity as a General Partner of the Partnership.

1.12    General Partnership Interest. "General Partnership Interest" means a Partnership Interest held by a General Partner in his or her capacity as such.

1.13    Limited Partner. "Limited Partner" means the Limited Partners named herein and any substitute or additional Limited Partner as provided in Section 10.3 hereof.

1.14    Limited Partnership Interest. "Limited Partnership Interest" means a Partnership Interest held by a Limited Partner in his or her capacity as such.

1.15    NBA. "NBA" means the National Basketball Association, a joint venture formed pursuant to the laws of the state of New York.

1.16    NBA Regulations. "NBA Regulations" means the Constitution, Bylaws, rules, regulations, and directives of the NBA, as the same may be amended from time to time.

1.17    Operating Cash Flow. "Operating Cash Flow" means all earnings from operations before reduction for interest, taxes, depreciation, and amortization.

1.18    Partner. "Partner" means any General Partner or any Limited Partner. "Partners" means the General Partner and the Limited Partners collectively.

1.19    Partnership. "Partnership" means the limited partnership formed by this Agreement.

1.20    Partnership Income and Loss. "Partnership Income" and "Partnership Loss" mean the income or loss of the Partnership, as the case may be, determined as of the close of the Partnership's fiscal year, including each item of Partnership taxable and nontaxable income, profit, gain, loss, or deduction.

2

1.21    Partnership Interest.  "Partnership Interest" means the entire ownership interest of a Partner in the Partnership at any particular time, including the right of such Partner to any and all benefits to which a Partner may be entitled under this Agreement, together with the obligations of such Partner to comply with all of the terms and provisions of this Agreement.

1.22    Percentage Interest.  "Percentage Interest" means a proportionate interest as a Partner in Partnership Income and Loss.  The Partners' Percentage Interests shall be established in accordance with Sections 6.2, and may be adjusted as provided therein.

1.23    Person.  "Person" means any natural person and any corporation, partnership, trust, association, or other legal entity.

1.24    Preference Amount.  "Preference Amount" has the meaning set forth in Section 5.2.

1.25    Reference Rate.  "Reference Rate" means the "prime," "base," or equivalent reference rate publicly announced from time to time by First Bank National Association, Minneapolis, Minnesota.

1.26    Team.  "Team" means the professional basketball team operated by the Partnership pursuant to the Franchise.

1.27    Transfer.  "Transfer," with respect to any Partnership Interest, when used as a noun, means any sale, assignment, trade, transfer, bequest, encumbrance, pledge, hypothecation, gift or any other disposition of all or any portion of a Partnership Interest or any interest therein, and to "Transfer" any Partnership Interest, when used as a verb, means to sell, to assign, to trade, to transfer, to bequeath, to encumber, to pledge, to hypothecate, to give or in any other way to dispose of all or any portion of a Partnership Interest or any interest therein.

## ARTICLE II
## FORMATION

2.1    Formation and Governing Law.  The General Partner and the Limited Partners hereby form a Limited Partnership under the provisions of the Act.  Upon the execution of this Agreement, the General Partner shall execute and file with the Minnesota Secretary of State a Limited Partnership Certificate on behalf of the Partnership.  The Partners agree to promptly sign any additional or supplemental amended Limited Partnership Agreement that may be required, and agree that the parties shall comply with all the provisions and requirements of the Act, which shall govern the rights and liabilities of the parties and the construction, interpretation, and application of this Agreement, except as otherwise expressly provided herein.  Notwithstanding any other provision of this Agreement, the General Partner shall have the power to cause the Partnership to be reconstituted as a limited partnership under the laws of the state of Delaware; provided that such reconstitution would not materially and adversely affect the economic rights of the Limited Partners, the limited liability of the Limited Partners, or the ability of the Partnership to be taxed as a partnership for federal income tax purposes.  In

such event this Agreement shall be amended as necessary to conform to the laws of the state of Delaware, and each Partner agrees to execute any and all documents to evidence the same.

2.2     Name.  The name of the Partnership shall be "Minnesota Timberwolves Basketball Limited Partnership."  The General Partner, in its sole discretion, may change the name of the Partnership from time to time upon written notice to the Limited Partners.  The business of the Partnership may be conducted under other names in the discretion of the General Partner.

2.3     Office.  The principal office of the Partnership shall be at 1725 Roe Crest Drive, North Mankato, Minnesota 56002-3728.  The General Partner, in its sole discretion, may change the principal office of the Partnership from time to time upon written notice to the Limited Partners.  The Partnership may maintain such other offices at such other places as the General Partner deems advisable.

2.4     Agent for Service of Process.  The agent for service of process on the Partnership shall be Gregory W. Jackson, whose address shall be the same as that of the principal office of the Partnership as set forth in Section 2.3.  The General Partner, in its sole discretion may change the Partnership's agent for service of process from time to time upon written notice to the Limited Partners.

2.5     Purpose and Character of Business: Powers.  The purpose and character of the business of the Partnership is (a) to acquire, own, manage, and operate the Franchise, the Team, and the related professional basketball and entertainment businesses, (b) to develop, manage, and operate other business activities related to the foregoing, (c) to acquire stock, partnership interests, or other ownership interests and/or contract rights relating thereto, and (d) to do any other act and engage in any other business that the General Partner determines to be necessary, related, or convenient to the accomplishment of such purposes.  Subject to such limitations as are specifically set forth in this Agreement, the Partnership shall possess all powers that may be possessed and exercised by limited partnerships under the Act.

2.6     Partnership Property.  All property owned by the Partnership, whether real or personal, tangible or intangible, shall be owned by the Partnership as an entity, and no Partner individually shall have any ownership interest in any such property.

2.7     Waiver of Partition.  Each Partner hereby waives any right such Partner may possess to a partition of any Partnership property or properties.

## ARTICLE III
## DURATION AND TERMINATION

The Partnership shall commence business upon the filing of the Partnership's Limited Partnership Certificate and shall continue until December 31, 2054, unless sooner terminated as hereinafter provided or by operation of law.

## ARTICLE IV
## IDENTITY OF PARTNERS

4.1     <u>General Partner</u>.  The name and business address of the General Partner are:

> Taylor Sports Group, Inc.
> 1725 Roe Crest Drive
> North Mankato, Minnesota 56002-3728

4.2     <u>Limited Partners</u>.  The name and business address of Taylor Corporation, the initial Limited Partner, are:

> Taylor Corporation.
> 1725 Roe Crest Drive
> North Mankato, Minnesota 56002-3728

The names and business addresses of the other Limited Partners shall be set forth on the signature pages by which they become parties to this Agreement.

## ARTICLE V
## CAPITAL CONTRIBUTIONS; LOANS FROM PARTNERSHIP

5.1     <u>Initial Capital Contributions</u>.

(a)     <u>General Partner</u>.  The initial Capital Contribution of the General Partner shall be $1,000,000.

(b)     <u>Initial Limited Partner</u>.  The initial Capital Contribution of Taylor Corporation, the initial Limited Partner, shall be $15,000,000.

(c)     <u>Additional Limited Partners.</u>  There shall be available for subscription additional Limited Partnership Interests at a price payable on or before the Closing Date.  Admission by subscription pursuant to this paragraph (c) shall require a minimum Capital Contribution of One Million Dollars ($1,000,000); provided that the General Partner, in its sole discretion, may admit Limited Partners for lesser Capital Contributions.  Subject to approval of the General Partner, each Person desiring to become a Limited Partner shall be admitted to the Partnership at such time as he or she has (i) executed a Subscription Agreement and such other documents as may be deemed necessary by the General Partner to admit such Person as a Limited Partner and to satisfy all state and federal securities laws and (ii) made the Capital Contribution required for the purchase of the Limited Partnership Interests for which he or she has subscribed.  The offering of Limited Partnership Interests by the Partnership is intended to be made pursuant to claimed exemptions from registration under the Securities Act of 1933 and applicable state securities laws, and, therefore, the offering shall be made only to Persons who are

5

purchasing their Limited Partnership Interests in the Partnership for their own account and for investment purposes only and not with the intention of distribution, dividing, or reselling such Limited Partnership Interests. In addition to the foregoing, the General Partner may accept Capital Contributions consisting of undivided interests in the Franchise, the Team, and the related business that is being acquired by the Partnership from Minnesota Professional Basketball Limited Partnership, and admit the contributor(s) as Limited Partner(s). Any such Capital Contribution shall have an agreed value proportionate to the purchase price being paid by the Partnership for the remainder of the Franchise, the Team, and the related business that is being acquired, which shall also be the amount of said Capital Contribution for all purposes of this Agreement, including establishing the Percentage Interest(s) of such Limited Partner(s).

5.2    Additional Capital Contributions.

(a)    Capital Calls. Subject to the limitation set forth in paragraph (f) of this Section 5.2, the General Partner, at any time and from time to time, shall be entitled to request additional Capital Contributions from the Partners (any such request being referred to herein as a "Capital Call"). Each Capital Call shall be made by written notice to the Partners and shall specify the aggregate amount of additional Capital Contributions requested, the purpose(s) thereof, each Partner's proportionate share thereof, and the due date thereof, which shall not be less than forty-five (45) days after the date of such notice.

(b)    Response. On or before the fifteenth day after the date of the notice described in paragraph (a), above, each Partner shall provide a written response to the General Partner indicating whether such Partner will (i) respond to the Capital Call and make an additional Capital Contribution in an amount equal to such Partner's proportionate share of the Capital Call (such a Partner is referred to herein as a "Responding Partner") or (ii) decline to make such additional Capital Contribution (such a Partner is referred to herein as a "Nonresponding Partner"). (If there are any Nonresponding Partners, the portion of the aggregate amount of additional Capital Contributions requested that is allocable to Nonresponding Partners shall be referred to as the "Unsubscribed Portion.").

(c)    Consequences of Less Than Unanimous Response. If there are any Nonresponding Partners with respect to a Capital Call, at the option of the General Partner, (i) the General Partner, Taylor Corporation, and/or Glen A. Taylor (if he is then a Partner), may make additional Capital Contributions in an amount equal to all or any part of the Unsubscribed Portion, (ii) the General Partner may admit a new Limited Partner pursuant to Article XI in exchange for Capital Contributions equal to all or any part of the Unsubscribed Portion, and/or (iii) the General Partner may offer the Unsubscribed Portion to the Partners generally in the manner spelled out in paragraph (a), above, for a Capital Call, in which case each Partner may offer to contribute all or any part of the

Unsubscribed Portion. If the amount of offered Capital Contributions offered in accordance with clause (iii), above, exceeds the amount of the Unsubscribed Portion after reduction by any amounts contributed pursuant to clauses (i) and (ii), above, the General Partner shall allocate the remainder of the Unsubscribed Portion among the offering Partners, to the extent possible, in proportion to their Percentage Interests. In the case of any of the foregoing, the General Partner may elect to either apply the dilution and preference provisions of paragraph (d), below, or apply the loan provisions of paragraph (e), below. If the General Partner offers the Unsubscribed Portion (or any part thereof) to the Partners generally, the General Partner's offer shall state whether the dilution/preference provisions or the loan provisions shall apply.

(d) <u>Dilution/Preferred Return</u>. If the General Partner elects to apply the provisions of this paragraph (d), the Percentage Interests of the Partners shall be redetermined, in which case each Partner's Percentage Interest after the date on which such Capital Contributions were due shall equal the percentage equivalent of such Partner's aggregate Capital Contributions over the life of the Partnership divided by the aggregate Capital Contributions of all Partners over the life of the Partnership. In such case each Partner who made additional Capital Contributions in response to a Capital Call for which there were any Nonresponding Partners shall accrue a "Preference Amount" equal to thirty percent (30%) of such additional Capital Contributions, which shall be taken into account in future distributions and allocations of Partnership Income.

(e) <u>Loan Treatment</u>. If the General Partner elects to apply the provisions of this paragraph (e), then the additional Capital Contributions made in response to the Capital Call shall thereafter not be treated as Capital Contributions, but shall constitute loans from such Partners to the Partnership. Such Partner loans shall be governed by the provisions of Section 5.5, below, except that such loans shall bear interest at a rate equal to three percent (3%) in excess of the Reference Rate, changing when and as the Reference Rate changes, or, if less, the highest rate permitted by law.

(f) <u>Maximum Additional Capital Calls</u>. The maximum aggregate amount for which the General Partner may make additional Capital Calls pursuant to this Section 5.2 shall be thirty percent (30%) of the aggregate Capital Contributions made by the Partners pursuant to Section 5.1. The foregoing limitation shall apply regardless of whether the amounts received in response to such Capital Calls are treated as Capital Contributions pursuant to paragraph (d), above, or loans pursuant to paragraph (e), above.

5.3 <u>Liability of Partners</u>. No Limited Partner shall have any liability to the Partnership in excess of such Limited Partner's Capital Contribution.

5.4     <u>No Right to Return of Contribution</u>.  No Partner shall have the right to withdraw or to demand the return of all or any part of his Capital Contribution, except as otherwise expressly provided herein.  The General Partner shall not be liable to the Limited Partners for repayment of their Capital Contributions.

5.5     <u>Loans from Partners to Partnership</u>.  Subject to the limitations set forth in Section 7.2 of this Agreement, the General Partner, or with the consent of the General Partner, a Limited Partner, may loan funds to the Partnership in excess of such Partner's Capital Contribution to pay expenses of the Partnership.  Such loans, if any, shall constitute loans to the Partnership and, in the discretion of the General Partner and the lending Partner, may be evidenced by promissory notes.  Such loans shall not be treated as Capital Contributions for any purpose hereunder, nor entitle the Partner to any increase in his share of the income, profits, gains, losses, or distributions of the Partnership.  Except as provided in Section 5.2(e), Partner loans shall bear interest at a rate equal to one percent (1%) in excess of the Reference Rate, changing when and as the Reference Rate changes, or, if less, the highest rate permitted by law.  Such Partner loans shall be repaid by the Partnership in the same order of priority as other unsecured creditors of the Partnership.  Interest on Partner loans shall be considered an operating expense of the Partnership and may be repaid by means of additional Partner loans.

5.6     <u>No Interest on Capital</u>.  No interest shall be paid to any Partner on his Capital Contribution.

**ARTICLE VI**
**ALLOCATIONS OF INCOME AND LOSS;**
**DISTRIBUTIONS OF CASH OR PROPERTY**

6.1     <u>Capital Accounts</u>.  A separate Capital Account shall be maintained by the Partnership for each Partner.  The Capital Account for each Partner shall be increased by such Partner's Capital Contributions and shall be decreased by the amount of money and the fair market value of any property distributed to such Partner.  Each Partner's Capital Account shall also be increased or decreased, as the case may be, to account for allocations of Partnership Income and Loss to such Partner.  As of the date on which additional Capital Contributions are made by any Partner or any Partnership Interest is withdrawn by any Partner, the Capital Account balances of the Partners may be restated to reflect the market values of the Partnership's properties as of such date and the manner in which Partnership Income and Loss would have been allocated had the Partnership disposed of its properties on such date, all in accordance with Treasury Regulations §§ 1.704-1(b)(2)(iv)(f) and (r), as in effect on the date hereof.  Subsequent adjustments to Capital Accounts shall be made so as to comply with the requirements of Treasury Regulations §§ 1.704-1(b)(2)(iv) and 1.704-1(b)(4)(i), as in effect on the date hereof.  For example, appreciation and depreciation of assets reflected in the Capital Accounts of the Partners by reason of the adjustments described above shall be taken into account in making later Capital Account adjustments for Partnership Income and Loss.

6.2    Percentage Interests.

(a)    Initial Percentage Interests.  The Percentage Interests of the Partners on the Closing Date will be proportionate to Capital Contributions made by the Partners pursuant to Section 5.1.

(b)    Adjustments of Percentage Interests.  The Percentage Interests of the Partners may be adjusted as a result of future Capital Calls as provided in Section 5.2.

6.3    Allocations of Partnership Income and Loss.  Partnership Income, if any, for any Partnership fiscal year shall be allocated first among the Partners in proportion to, and to the extent of, their Unallocated Preference Amounts, as defined below.  Except as provided above, or as otherwise expressly provided in this Agreement, Partnership Income and Loss shall be allocated to the Partners pro rata based on their Percentage Interests in the Partnership on each' day of the Partnership taxable year.  Allocations for federal income tax purposes shall be made in accordance with the requirements of Treasury Regulations § 1.704-1(b)(4)(i), as in effect on the date hereof, to take into account prior Capital Account adjustments.  For purposes of the foregoing, a Partner's "Unallocated Preference Amount" at any time shall equal the sum of the Preference Amounts allocated with respect to such Partner's Partnership Interest over the life of the Partnership, reduced by all prior allocations of Partnership Income with respect to such Unallocated Preference Amounts pursuant to the first sentence of this Section.  Notwithstanding the foregoing, allocations of Partnership Income and Loss for the Partnership's first fiscal year shall be made in such manner as will cause the aggregate allocations among the Partners to be what such allocations would have been if all Partners had been admitted on the same date.

6.4    Qualified Income Offset.  Notwithstanding Section 6.3 or any other contrary provision of this Agreement, in accordance with Treasury Regulations § 1.704-1(b)(2)(ii)(d), as in effect on the date hereof, if any Limited Partner unexpectedly receives an adjustment, allocation, or distribution described in clauses (4), (5), or (6) of Treasury Regulations § 1.704-1(b)(2)(ii)(d), as in effect on the date hereof, which creates a deficit balance in such Limited Partner's Capital Account (as adjusted pursuant to such Treasury Regulations), such Limited Partner will be allocated items of income and gain (consisting of a pro rata portion of each item of Partnership Income, including gross income and gain for such year) in an amount and manner sufficient to eliminate such deficit balance as quickly as possible.  After such deficit balances have been eliminated as provided herein, subsequent allocations of Partnership Income and Loss shall be made in such manner as will cause the aggregate allocations of Partnership Income and Loss over the life of the Partnership to be as close as possible to what such allocations would have been if allocations had been made solely under Section 6.3.

6.5    Section 704(c) Allocation.  To the extent required by Section 704(c) of the Code, items of income, gain, loss, or deduction with respect to contributed properties shall be allocated among the Partners in such manner as takes into account any variations between the bases of such properties to the Partnership upon contribution and the fair market values of such

properties at the time of contribution.  Any allocations made solely to comply with this Section 6.5 and Section 704(c) of the Code shall not be reflected in Capital Account adjustments.

6.6     Distributions Prior to Liquidation.

(a)     Distributions for Taxes.  Subject to paragraph (c), below, if the Partnership generates income taxable to the Partners for any fiscal year, on or before April 1 of the following year, the Partnership shall distribute among the Partners, in cash, an amount equal to the product of (i) the sum of the Partnership's net ordinary income and net capital gain for the preceding fiscal year multiplied by (ii) the maximum combined marginal rate for federal and Minnesota individual income taxes applicable to such income and gains, taking into account any cross-deductibility.  Such distributions shall be made among the Partners in proportion to their Percentage Interests.

(b)     Other Distributions Prior to Liquidation.  Subject to paragraph (c), below, the General Partner shall determine from time to time whether to make any distributions to the Partners in addition to those provided for in paragraph (a), above; provided, however, that no such distributions shall be made if there remains unpaid any interest or principal with respect to any Partner loans under paragraph (e) of Section 5.2.  In making said determinations the General Partner may create or add to such reserves as it deems necessary or appropriate for the Partnership.  Such distributions shall be made first among the Partners in proportion to, and to the extent of, their Undistributed Preference Amounts, as defined in paragraph (e), below.  Any remaining distributions shall be made among the Partners in proportion to their Percentage Interests.

(c)     Limitation on Distributions.  No distributions to Partners shall be made pursuant to this Section 6.6 if such distribution would cause the Partnership to violate any covenant or other restriction contained in any loan agreement or other contract by which the Partnership is bound.

(d)     Distributions in Cash.  All distributions to Partners prior to the liquidation, winding up, and dissolution of the Partnership shall be in cash.

(e)     Undistributed Preference Amounts.  A Partner's "Undistributed Preference Amount" at any time shall equal the sum of the Preference Amounts allocated with respect to such Partner's Partnership Interest over the life of the Partnership, reduced by all prior distributions allocated to such Undistributed Preference Amounts pursuant to paragraph (b), above.

6.7     Distributions Upon Dissolution and Winding Up.  At the time of the dissolution and winding up of the Partnership, following the allocation of all Partnership Income and Loss and the payment of all Partnership obligations, the remaining assets shall be distributed to the

Partners in proportion to, and to the extent of, their Undistributed Preference Amounts, and then in accordance with the balances in their respective Capital Accounts.

6.8   <u>No Distribution by Reason of Withdrawal</u>.  Withdrawal from the Partnership shall not entitle any Partner to receive any distribution from the Partnership except as distributions to Partners are subsequently made pursuant to Sections 6.6 or 6.7.

6.9   <u>Distributions in Kind</u>.  No Partner shall have any right to demand or receive a distribution from the Partnership in any form other than cash, nor shall any Partner be compelled to accept any distribution of property in kind except in the dissolution and winding up of the Partnership under circumstances where all Partners receive undivided interests in property on the same basis.  In the event of a distribution of property in kind, such property shall be assumed to have been sold at its fair market value at the time of the distribution, and the resulting gain or loss shall be allocated among the Partners, and their Capital Accounts shall be adjusted accordingly.

6.10   <u>Effect of Transfer on Allocation of Partnership Income and Loss and Distributions</u>.  Partnership Income and Loss allocable to any Partnership Interest Transferred during a year shall be allocated between the assignor and assignee based upon the length of time during any fiscal year of the Partnership, as measured by the effective date of the Transfer, that the Partnership Interest was owned by each of them, or, in the discretion of the General Partner, based upon a cut-off of the Partnership books as of the effective date of the Transfer. All distributions after the effective date of the Transfer shall be made to the assignee.

6.11   <u>Withholding</u>.  The Partnership may withhold taxes from distributions to Partners to the extent the General Partner reasonably believes that such withholding is required by law.

### ARTICLE VII
### RIGHTS, POWERS, AND DUTIES OF
### THE GENERAL PARTNERS

7.1   <u>Management Power</u>.  The General Partner shall have exclusive management and control of the business of the Partnership, and all decisions regarding the management and affairs of the Partnership shall be made by the General Partner. The General Partner shall have all the rights and powers of a partner in a partnership without limited partners as provided by the laws of the State of Minnesota, except to the extent such rights and powers are expressly limited by this Agreement.  Except as otherwise expressly provided in this Agreement, the General Partner is hereby granted the right, power, and authority to do on behalf of the Partnership all things which, in its sole judgment, are necessary, proper, or desirable to carry out the aforementioned duties and responsibilities. The General Partner shall use its best efforts to carry out the purposes and business of the Partnership in a prudent and businesslike manner; provided, however, that the General Partner, as such, shall not be obligated to devote its full time to the conduct of the Partnership affairs, but shall devote only as much time as it deems necessary for the proper conduct thereof, and provided further, that nothing in this Agreement shall be deemed to restrict in any way the freedom of the General Partner to conduct any other

11

businesses or activities whatsoever (including engaging in all aspects of the entertainment and/or professional sports businesses or other investment transactions of any nature or character) without any accountability to the Partnership. Without limiting the power and authority of the General Partner, it shall have the power and authority, in the name of and on behalf of the Partnership, to do the following:

(a)   To perform any and all acts and engage in any and all activities necessary, customary, or incidental to the acquisition, ownership, operation, administration, and management of the Franchise, the Team, and the Partnership's business operations in general;

(b)   To take any and all actions it deems necessary or prudent to comply with NBA Regulations;

(c)   To determine whether the Partnership shall make any distributions in accordance with Section 6.6 and the amounts of any such distributions;

(d)   To establish such reserves to help meet anticipated Partnership needs or expenses as it deems reasonable or necessary;

(e)   To incur reasonable expenses in carrying out the purposes of the Partnership;

(f)   To execute any and all agreements, contracts, documents, and instruments that it deems necessary or convenient in connection with the operation of the business of the Partnership or which otherwise may be necessary or incidental to the accomplishment of the purposes and business of the Partnership;

(g)   To bring, defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Partnership;

(h)   To employ and dismiss from employment any and all employees, agents, independent contractors, attorneys, accountants, and other Persons in the operation and management of the business of the Partnership as it deems necessary or appropriate, whether or not such Persons are Affiliates of any Partner, on such terms and for such compensation as it determines to be reasonable;

(i)   To open accounts and deposit and maintain funds in the name of the Partnership in banks, savings and loan associations, registered money market funds, brokerage houses, and other financial institutions or funds as the General Partner shall determine, and to provide for the withdrawal of such funds on the signature of such Person or Persons as the General

Partner shall authorize; provided, however, that the Partnership funds shall not be commingled with the funds of any other Person;

(j)     To cause the Partnership to make or revoke elections provided for under the Code, including specifically the election referred to in Section 754 thereof;

(k)     To borrow on behalf of the Partnership such amounts as it deems necessary or beneficial for the conduct of the Partnership's business; and

(l)     To serve as "Tax Matters Partner" in the event of any proceeding affecting any Partnership federal income tax return.

7.2     Limitations on Authority of the General Partner.

(a)     Actions Requiring Unanimous Limited Partner Consent.  Without the consent of all of the Limited Partners, the General Partner shall not have authority to:

(i)     Do any act in contravention of this Agreement or which would make it impossible to carry on the ordinary business of the Partnership; or

(ii)     Possess Partnership property, or assign its right in specific Partnership property, for other than a Partnership purpose.

(b)     Actions Requiring Less Than Unanimous Limited Partner Consent. Without the consent of Limited Partners holding a majority of the Percentage Interests held by Limited Partners that are entitled to vote, the General Partner shall not have authority to:

(i)     Make or permit any loans by a Partner to the Partnership pursuant to Section 5.5 in an aggregate amount exceeding Ten Million Dollars ($10,000,000) (amounts treated as loans in response to Capital Calls pursuant to Section 5.2 shall be disregarded for purposes of this limitation); or

(ii)     Sell or otherwise dispose of the Franchise or the Team.

7.3     Right of Public to Rely on Authority of General Partner; Signatory Authority. No Person shall be required to determine the authority of the General Partner to make any undertaking on behalf of the Partnership, or to see to the application or distribution of revenues or proceeds paid to the General Partner.

13

7.4     <u>Compensation to the General Partner</u>.  The Partnership shall be obligated to pay a management fee to the General Partner for each fiscal year of the Partnership.  The amount of the management fee shall equal ten percent (10%) of the partnership's Operating Cash Flow for such fiscal year.  In its reasonable discretion, the General Partner may pay itself advances on such management fee during the course of a fiscal year; provided that the General Partner estimates in good faith that the sum of such advances will not exceed eighty percent (80%) of the total fee for such year.  The remainder of the management fee shall be paid after the close of the fiscal year within thirty (30) days after it is finally determined.  Notwithstanding the foregoing, the management fee provided for in this Section 7.4, shall be paid only to the extent that the Partnership has cash sufficient to pay the same after paying or providing for payment of all current principal and interest obligations under loan obligations of the Partnership.  To the extent the Partnership is unable to pay the management fee owed to the General Partner because of the foregoing restriction, the unpaid amount shall be accrued as an obligation of the Partnership and shall be paid as soon as the Partnership can do so without violating said restriction.

7.6     <u>Transactions with Partners and Affiliates</u>.  In addition to transactions specifically contemplated by this Agreement, the Partnership is expressly permitted to enter into other transactions with the General Partner, with Limited Partners, and with Affiliates of the General Partner or Limited Partners; provided that the terms of any such transaction shall be reasonably competitive with those that could have been obtained in a transaction between the Partnership and an unrelated party.

7.7     <u>Reimbursement of Expenses</u>.  Except to the extent otherwise provided for herein, and except for items generally constituting the General Partner's overhead, the Partnership will pay all costs and expenses associated with the Partnership business, and shall reimburse the General Partner for the actual costs incurred for goods, materials, and services used by or for the Partnership.  In addition, the Partnership shall assume and/or reimburse the General Partner and/or its Affiliates for any obligations and liabilities that it or its Affiliates have incurred on behalf of, or for the benefit of, the Partnership prior to its formation, including expenses of the organization of the Partnership and the offering of interests in the Partnership, whether entered into personally or in the name of the Partnership.  Such obligations and liabilities are hereby ratified and assumed by the Partnership, and the Partnership agrees to perform under the terms and conditions specified in such written documents, if any, as establish or evidence any such obligations or liabilities.

7.8     <u>Agents</u>.  The General Partner may appoint agents of the Partnership, who may be employees of the Partnership, with such titles, duties, and authority as it shall designate.  Such authority may include the right on the part of the agent to designate other agents of the Partnership and/or to hire and/or discharge employees of the Partnership.  The General Partner, at any time, may remove or terminate the authority of any such agent or employee.

7.9     <u>Indemnification and Liability of General Partner</u>.  The Partnership shall indemnify the General Partner against any claim or liability incurred by the General Partner in connection with the Partnership, including, but not limited to, the administration of the

Partnership and its affairs, tax matters related to the Partnership, and the conduct of the business of the Partnership, and neither the Partnership nor any Partner shall have any claim against the General Partner by reason of any such act or omission of the General Partner; provided that, in each instance, the General Partner shall not be indemnified or exculpated if such act or failure to act was not in good faith, was in material breach of the Agreement, or constituted fraud, gross negligence, or willful misconduct. The provisions of this section regarding liability and indemnification shall apply with equal force and effect to any agent, officer, director, owner, partner, or employee of the General Partner, and their successors and assigns.

## ARTICLE VIII
## RESIGNATION, EXPULSION, DEATH, AND
## REPLACEMENT OF THE GENERAL PARTNER

8.1     Resignation.  The General Partner shall not resign from its position as a General Partner of the Partnership except upon providing for a successor General Partner that is accepted by Limited Partners holding sixty percent (60%) of the Percentage Interests held by Limited Partners that are entitled to vote.  Notwithstanding any other provision of this Agreement, a Person may be admitted as a successor General Partner only if such admission complies in all respects with all applicable provisions of NBA Regulations, including the obtaining of any required consents.

8.2     Expulsion.  A General Partner shall be expelled without further action for "cause," which means (a) the General Partner's Bankruptcy; or (b) a final judicial determination that the General Partner (i) was grossly negligent in failing to perform the General Partner's obligations under this Agreement, (ii) committed a fraud upon the Partners or upon the Partnership, (iii) has committed a felony in connection with the management of the Partnership or its business, or (iv) was in material breach of the General Partner's obligations under this Agreement and failed to cure such breach within a reasonable time after the General Partner became aware of such breach.

8.3     Transfer of General Partnership Interest.  Except in connection with a Transfer to a successor General Partner pursuant to Section 8.1, a General Partner shall have no right to sell, Transfer, or assign its entire Partnership Interest, but may Transfer a portion, constituting less than all, of such Partnership Interest in accordance with Article X.  The voluntary withdrawal by any General Partner from the Partnership or a Transfer by such General Partner of its entire Partnership Interest shall not be effective except in accordance with the provisions of this Agreement.  Except as provided in this Article VIII, an assignee of a Partnership Interest from a General Partner may not become a General Partner, but may become an additional or substitute Limited Partner in accordance with Article X.  The foregoing provisions shall apply to involuntary as well as voluntary Transfers, including purported Transfers in connection with the dissolution of a marriage.

15

8.4    Replacement of the General Partner.  In the event of a vacancy in a General Partner position for any reason, including the death, expulsion, or wrongful withdrawal of the General Partner, the remaining General Partner(s), if any, may select a successor General Partner.  Such remaining General Partner(s) shall provide written notice of the successor General Partner to all Limited Partners.  At any time after the date a General Partner vacancy has been created, if there is no remaining General Partner, Limited Partners holding ten percent (10%) or more of the outstanding Percentage Interests held by Limited Partners that are entitled to vote, upon at least fifteen (15) days' written notice to all Partners, may call a special meeting of the Partnership for the purpose of replacing the General Partner.  At such meeting Partners holding a majority of all Percentage Interests entitled to vote, may replace the General Partner. Notwithstanding any other provision of this Agreement, a Person may be admitted as a successor General Partner only if such admission complies in all respects with all applicable provisions of NBA Regulations, including the obtaining of any required consents.

8.5    Consent of Partners.  Each of the Partners, by the execution of this Agreement, hereby consents to the admission of a successor General Partner who has been admitted as a General Partner in accordance with Section 8.1 or Section 8.4.  Such admission of a General Partner, without any further consent or approval of the Limited Partners, shall be an act of all of the Partners.

8.6    Conversion of General Partner Interest.  If a General Partner ceases to be a General Partner, for whatever reason, his or her Partnership Interest shall become that of a Limited Partner.  As necessary, the Partnership's Limited Partnership Certificate shall be amended to reflect that fact.

# ARTICLE IX
## PROVISIONS APPLICABLE TO LIMITED PARTNERS

9.1    Investment Representations.  Each Limited Partner, by becoming a limited partner of the Partnership and becoming obligated hereunder, hereby represents and warrants to the General Partner, the other Limited Partners, and the Partnership as follows:

(a)    Such Limited Partner's acquisition of an interest in the Partnership is made as a principal for his, hers, or its sole account for investment purposes only and not with a view toward the distribution of all or any portion thereof and under no circumstances will such Limited Partner sell, Transfer or assign all or any portion of his, hers, or its interest in the Partnership except in compliance with the provisions of this Agreement.

(b)    Such Limited Partner is relying on his, hers, or its own business and financial knowledge and experience, or that of such Limited Partner's duly qualified investment advisor, in making a decision to enter into and execute this Agreement.  Such Limited Partner, alone or together with such investment advisor, has such knowledge and experience in business and financial matters as will enable such Limited Partner to utilize the information made available to him,

16

her, or it in connection with his, hers, or its investment in the Partnership, to evaluate the merits and risks of the prospective investment and to make an informed investment decision.

(c)     Such Limited Partner is aware of the restrictions on Transfer of his, hers, or its interest in the Partnership and that the same will at no time be freely transferable or be assignable otherwise than to a Person accepting similar restrictions on transferability.

(d)     Such Limited Partner has no reason to anticipate any change in circumstances, financial or otherwise, which would cause such Limited Partner to sell or distribute or necessitate or require any sale or distribution of his, hers, or its interest in the Partnership.

(e)     Such Limited Partner is familiar with the nature of and risks attending investments in securities.

(f)     Such Limited Partner is fully aware of the restrictions on resale of his, hers, or its interest in the Partnership under this Agreement and the Securities Act of 1933, as amended (the "Securities Act"), and applicable state securities laws, and the effect of such a sale under federal and state tax laws; in particular, is aware that the interest in the Partnership will not be registered under the Securities Act at any time, will not at any time be freely salable, and that any Transfer thereof may have significant adverse tax consequences.

9.2     Nonassessability.  No Limited Partner shall be required to make any contributions to the capital of the Partnership in excess of the amount required by Section 5.1.

9.3     Limitations on Control.  Except as explicitly provided in this Agreement, no Limited Partner shall have the right to participate or interfere in the management or control of the Partnership business.  No Limited Partner shall transact any business for the Partnership or have the power to sign for or bind the Partnership, such powers being vested solely and exclusively in the General Partner.

9.4     Limitation of Liability.  It is the intention of the Partners that no Limited Partner shall be bound by or be personally liable for the expenses, liabilities, or obligations of the Partnership except as required by the Act.

9.5     Effect of Bankruptcy. Death, or Incompetence of a Limited Partner.  The Bankruptcy, death, or adjudication of incompetence of a Limited Partner shall not cause the termination or dissolution of the Partnership, and the business of the Partnership shall continue. Upon any such occurrence, the trustee, receiver, executor, administrator, committee, guardian, conservator, or other legal successor or representative of such a Limited Partner shall have all the rights possessed by such Limited Partner for the purpose of settling or managing such Limited Partner's estate or property or, subject to this Agreement, assigning all or any part of

such Limited Partner's Partnership Interest and joining with the assignee in satisfying conditions precedent to the admission of the assignee as a substitute or additional Limited Partner.

9.6     Copies of Limited Partnership Certificate and Limited Partnership Agreement. The Limited Partners shall receive a copy of this Agreement at the time of execution hereof. The General Partner shall also furnish a copy of the Partnership's Limited Partnership Certificate upon the filing thereof with the Minnesota Secretary of State.  The General Partner thereafter need not furnish to the Limited Partners copies of this Agreement, the Partnership's Limited Partnership Certificate, or any amendments of either, except upon request or upon adoption of an amendment requiring the consent of all Partners as set forth in Article XVI.

9.7     Voting/Consent of Limited Partners.  Where this Agreement requires the vote or consent of Limited Partners, (a) any Limited Partner who was formerly a General Partner and was expelled from such position pursuant to Section 8.2 shall have no right to vote, and (b) any Limited Partner that is subject to regulation under the Bank Holding Company Act of 1956, as amended, and is prohibited thereby from voting on business matters of the Partnership, shall be entitled to vote only if the matter at issue is the dissolution of the Partnership or the sale of the Franchise or Team.  If a Limited Partner is precluded from voting, the Percentage Interest of such Limited Partner shall be disregarded in determining the necessary proportion of Percentage Interests required to consent to, approve, or take the action at issue.

## ARTICLE X
## TRANSFER OF PARTNERSHIP INTERESTS

10.1     Transfer of Partnership Interest.  A Partner may not Transfer or assign all or any part of such Partner's Partnership Interest except in accordance with this Agreement.  In any case, no Transfer shall be effective until a duly executed and acknowledged written instrument of assignment, in form and substance satisfactory to the General Partner, is received and accepted by the General Partner.  No proposed Transfer which (i) fails to comply with all applicable state and federal securities laws, (ii) will have an adverse impact on the ability of the Partnership to be taxed as a partnership for federal income tax purposes, (iii) will result in a Limited Partner being exposed to liability as a general partner, (iv) will result in the termination of the Partnership for tax purposes pursuant to Section 708 of the Code, or (v) fails to comply in all respects with all applicable provisions of NBA Regulations, including the obtaining of any required consents, will be effective for any purpose.  The General Partner may request an opinion of counsel satisfactory to it (with the costs and expenses thereof payable by the assignee), stating that the foregoing conditions have been satisfied.

10.2     Permitted Transferees.  Without the consent of any Partner, a Partner may Transfer all or any portion of such Partner's Partnership Interest to Taylor Sports Group, Inc., Taylor Corporation, or Glen A. Taylor.  No other Transfer shall be made except (a) with the consent of the General Partner, which consent may be granted or withheld in its sole discretion, or (b) pursuant to the right of first refusal provisions set forth in Section 10.3.  The foregoing

provisions shall apply to involuntary as well as voluntary Transfers, including purported Transfers in connection with the dissolution of a marriage.

10.3    Rights of First Refusal.

(a)    Notice of Proposed Transfer.  Except as permitted by Section 10.2, if a Partner desires to Transfer all or any portion of any Partnership Interest in any manner (such Partner being hereinafter referred to as the "Offering Partner"), either without consideration by reason of the death of a Partner, as set forth in paragraph (i), below, or to a bona fide, creditworthy purchaser for cash or cash equivalents, then the Offering Partner shall give written notice to the Partnership and the General Partner of such desire (an "Offer Notice").  The Offer Notice shall specify the Partnership Interest that is the subject of the proposed Transfer (the "Offered Interest"), the identity of the proposed transferee, and, if applicable, the purchase price and other terms of the proposed Transfer.

(b)    First Option.  For a period of thirty (30) days (the "First Option Period") following the receipt of the Offer Notice, Taylor Sports Group, Inc., Taylor Corporation, and/or Glen A. Taylor, in such proportions as they may agree, shall have the right to buy all or a portion of the Offered Interest, at the price and on the terms set forth in this Section 10.3.

(c)    Second Option.  For a period of fifteen (15) days beginning with the termination of the First Option Period (the "Second Option Period"), any General Partner that was not included among the parties possessing rights under paragraph (b), above, shall have the right to purchase all or any portion of the Offered Interest for which purchase options were not exercised under paragraph (b), above, at the price and on the terms set forth in this Section 10.3.

(d)    Third Option.  For a period of fifteen (15) days beginning with the termination of the Second Option Period, or with the termination of the First Option Period if there is no General Partner that was not included among the parties possessing rights under paragraph (b), above,(the "Third Option Period"), the Limited Partners, in proportion to their Percentage Interests, shall have the right to purchase all or any portion of the Offered Interest for which purchase options were not exercised under paragraphs (b) and (c), above, at the price and on the terms set forth in this Section 10.3.

(e)    Fourth Option.  For a period of fifteen (15) days beginning with the termination of the Third Option Period, (the "Fourth Option Period"), the Partnership, shall have the right to purchase all or any portion of the Offered Interest for which purchase options were not exercised under paragraphs (b), (c), and (d), above, at the price and on the terms set forth in this Section 10.3.  The Partnership may assign its right of purchase to any other Person whether or not such Person is currently a Partner.

(e)     Purchase of All Offered Interest.  Notwithstanding the foregoing, unless, under the preceding paragraphs of this Section, there are elections to purchase all of the Offered Interest, the Offering Partner shall not be required to sell any of the Offered Interest under this Section 10.3.  Instead, the Offering Partner shall be entitled, for a period of sixty (60) days following the expiration of the Fourth Option Period, to Transfer the Offered Interest to the Person identified in, and in the manner and on the terms specified in, the Offer Notice.  If ownership of the Offered Interest has not been acquired by the transferee within the sixty-day period, the Offered Interest shall remain subject to all the provisions of this Section 10.3, and may not be Transferred without again complying with the terms hereof.

(f)     Manner of Exercising Option.  A Person shall exercise its purchase option under the preceding paragraphs by delivering to the Offering Partner and to the General Partner, within the applicable Option Period, written notice of exercise.  Where appropriate, such notice shall specify the portion of the Offered Interest that the Person elects to purchase.

(g)     Purchase Price and Terms.  In the case of a proposed Transfer for consideration, the purchase price for the Offered Interest shall be the purchase price payable by the proposed transferee, as set forth in the Offer Notice.  In the case of a Transfer by reason of death, the purchase price for the Offered Interest shall be the Fair Market Value of the Offered Interest, determined in accordance with paragraph (j), below, as of the date of the Offer Notice.  The purchase price for the Offered Interest shall be paid in cash at the closing, except that, if the Offer Notice described a proposed Transfer for consideration, at the option of Persons electing to purchase a majority of the Offered Interest, the purchase price may be paid in the manner and on the terms specified in the Offer Notice.

(h)     Closing.  The closing of the purchase of any Offered Interest under this Section 10.3 shall be held at a time and place reasonably convenient to all participants, as specified by the General Partner, within sixty (60) days after purchase options for the entire Offered Interest have been exercised.

(i)     Transfers by Reason of Death.  Upon the Transfer of a Partnership Interest by reason of the death of a Partner, the legal representative of the deceased Partner's estate or other successor in interest to such deceased Partner's Partnership Interest shall provide written notice of the death as soon thereafter as is reasonably practical.  Such notice shall also describe the proposed disposition of the Partnership Interest, as set forth in the deceased Partner's will or such trust instrument or other document that purports to govern the disposition of the Partnership Interest.  Such notice shall be deemed an Offer Notice for purposes of paragraph (a), above, triggering all rights set forth in this Section 10.3.

(j)     Determination of Fair Market Value for Purchase After Death.  If the Fair Market Value of a Partnership Interest must be determined because of a purchase following the death of a Partner pursuant to paragraph (i), above, the determination shall be made by agreement of the parties to the purchase and sale. In the absence of such agreement, at the request of any party, the determination shall be made by an appraiser selected by the agreement of the Partnership and the legal representative of the deceased Partner's estate or the deceased Partner's other successor in interest.  In such case, the Partnership shall pay for the appraisal.  If the Partnership and the legal representative of the deceased Partner's estate or the deceased Partner's other successor in interest do not agree upon an appraiser within fifteen (15) days after options have been exercised to purchase the entire Offered Interest, then, within the next five (5) days each shall select an appraiser to be paid at its, his, or her own expense.  The two appraisers shall jointly agree upon the Fair Market Value, which agreement shall be controlling. If the two appraisers do not agree upon a Fair Market Value within thirty (30) days of the appointment of the second of them, they shall appoint a third appraiser.  If the two appraisers do not agree upon a third appraiser within ten (10) days after said thirty-day period, the Chief Judge of the District Court for the Fifth Minnesota Judicial District shall choose the third appraiser on petition of either or both appraisers.  The cost of the third appraisal shall be shared equally by the Partnership and the legal representative of the deceased Partner's estate or the deceased Partner's other successor in interest.  The Fair Market Value determined by agreement of two of the three appraisers shall be binding upon all parties.  If no two of the three appraisers agree upon the Fair Market Value, the Fair Market Value shall be the average of the two values established by the appraisers that are closest in dollar amount, unless the middle value equals the average of the three values, in which case the Fair Market Value shall be the middle value.  Unless otherwise agreed, in order to be eligible to be an appraiser under this section, an individual must be either a certified public accountant or a qualified, experienced, and reputable investment banker or appraiser of businesses.

(k)     Continued Applicability of Agreement.  Any Offered Interest acquired by a transferee pursuant to the provisions of this Article shall remain fully subject to the provisions of this Agreement, whether or not such transferee is admitted as a substitute or additional Partner.

10.4    Substitute and Additional Limited Partners.  No assignee of all or part of any Partnership Interest shall have the right to become a substitute or additional Limited Partner unless (i) the assignor is a Partner and has stated such intention in an instrument of assignment that conforms to the requirements of this Article X or such assignee received such Partnership Interest through a Transfer by reason of the death of a Partner, (ii) the General Partner has consented to the admission of such assignee as a substitute or additional Limited Partner, which consent may be granted or withheld in the absolute discretion of the General Partner, (iii) such assignee shall have executed an irrevocable power of attorney, in a form satisfactory to the General Partner, appointing the General Partner as the assignee's lawful attorney-in-fact in

accordance with the terms and provisions of Article XII of this Agreement, and (iv) such assignee shall have executed such other documents and paid such expenses as are required by Section 10.5 in connection with such admission as substitute or additional Limited Partner. The admission of a substitute or additional Limited Partner shall be effected without the consent of any of the Limited Partners. The rights of any assignee of a Partnership Interest who does not become a substitute or additional Limited Partner shall be limited to the right to receive distributions in accordance with Articles VI and XIV hereof. The Partnership Interest held by such assignee, however, shall remain subject to all limitations and restrictions contained in this Agreement, including restrictions on Transfer.

 10.5 <u>Documents and Expenses</u>. As a condition to admission as a substitute or additional Limited Partner, an assignee of all or a part of any Partnership Interest or the legatee or distributee of all or part of a Partnership Interest shall execute and acknowledge such instruments, in form and substance satisfactory to the General Partner, as the General Partner deems necessary or advisable to effectuate such admission and to confirm the agreement of the Person being admitted as such substitute or additional Limited Partner to be bound by all of the terms and provisions of this Agreement. Such assignee, legatee, or distributee shall pay all reasonable expenses in connection with such admission as a substitute or additional Limited Partner, including, but not limited to, legal fees and costs of preparing and filing any amendment to the of Partnership's Limited Partnership Certificate if necessary or desirable in connection therewith.

 10.6 <u>Acquit Partnership</u>. Until such time as a written instrument of assignment that conforms to all requirements of this Article X has been received by and recorded on the books of the Partnership, any payment by the Partnership to an assigning Partner or a Partner's executors, administrators, or representatives shall acquit the Partnership of liability to the extent of such payments to any other Person who may have an interest in such payment by reason of an Transfer by the Partner, such Partner's death, or otherwise.

**ARTICLE XI**
**ADMISSION OF NEW PARTNERS**

 The General Partner may admit new General Partners or Limited Partners to the Partnership in accordance with Section 5.2 or otherwise. The admission of any new Partner shall comply in all respects with all applicable provisions of NBA Regulations, including the obtaining of any required consents, as well as the requirements of Article X applicable to assignees of Partnership Interests.

**ARTICLE XII**
**POWER OF ATTORNEY**

 Each Limited Partner, by execution hereof, hereby irrevocably appoints the General Partner(s), and each of them if there be more than one, as his true and lawful attorneys-in-fact, with full power and authority to act in his, her, or its name, place, and stead, to make, swear to,

execute, acknowledge, and file documents relating to the Partnership and its business, including, without limitation, the following:

   (a)    Any and all Limited Partnership Certificates of the Partnership and any amendments or supplements thereto that may be required by the Act;

   (b)    Any certificate or other instrument and any amendments thereto that may be required to be filed by the Partnership in order to accomplish the business and purposes of the Partnership, including any business certificate, fictitious name certificate, or assumed name certificate;

   (c)    Any cancellation of such Limited Partnership Certificates and any and all other documents and instruments that may be required upon the dissolution and liquidation of the Partnership;  and

   (d)    Any amended limited partnership agreement or Limited Partnership Certificate that has been duly adopted hereunder or authorized hereby.

The foregoing appointment by all Limited Partners of the General Partner(s) as their attorney(s)-in-fact shall be deemed to be a special, irrevocable power coupled with an interest and shall survive the Bankruptcy, death, adjudication of incompetence, or dissolution of any Person hereby giving such power and the Transfer of all or any part of the Partnership Interest of such Person.  Such power may be exercised by any General Partner either by signing separately as attorney-in-fact for each Limited Partner, or by listing all Limited Partners executing any instrument and signing once as attorney-in-fact for all of them.

## ARTICLE XIII
## BOOKS AND RECORDS;
## REPORTS AND FISCAL MATTERS

13.1   <u>Books and Records</u>.  The books and records of the Partnership shall be maintained at the designated or principal office of the Partnership as listed in the Partnership's Limited Partnership Certificate and shall be available for examination there by any Partner or his duly authorized representatives by appointment during ordinary business hours upon five (5) days notice.  The Partnership shall keep the following records:

   (a)    a current list of the full name and last known business address of each Partner, separately identifying the General Partners in alphabetical order and the Limited Partners in alphabetical order;

   (b)    a copy of the Limited Partnership Certificate and all certificates of amendment thereto, an original, executed copy of the Agreement and all amendments thereto, and executed copies of any powers of attorney pursuant to which any of the foregoing have been executed;

23

(c)     copies of the Partnership's federal, state, and local income tax returns and reports, if any, for the three most recent years;

(d)     copies of any financial statements of the Partnership for the three most recent years; and

(e)     to the extent not contained in the Agreement, a separate writing setting out the amount of cash and a description and statement of the agreed value of the other property or services contributed by each Partner and which each Partner has agreed to contribute.

In addition, the Partnership shall maintain any other books and records required to be maintained by the Act and such additional books and records as the General Partner, in its sole discretion, deems advisable.

13.2   Accounting and Fiscal Year.  The books of account shall be kept in accordance with such method of accounting as the General Partner shall determine.  The fiscal year of the Partnership shall be determined by the General Partner in its sole discretion.

13.3   Annual Tax Information.  The General Partner shall send or cause to be sent to each Person who was a Partner at any time during a fiscal year such tax information as shall be necessary for such Partner's preparation of his federal income tax return and required state income tax returns.  The General Partner shall make reasonable efforts to cause this to be furnished within ninety (90) days after the close of each fiscal year

13.4   Annual Accounting Report.  For each fiscal year of the Partnership the Partnership shall furnish to all Partners an annual financial report containing a balance sheet, a statement of income and expense, a statement of Partners' equity, and a statement of changes in financial position, all of which shall be prepared in accordance with generally accepted accounting principles and shall be accompanied by an auditor's report containing an opinion of an independent certified public accountant.  The General Partner shall make reasonable efforts to cause this to be furnished within one hundred twenty (120) days after the close of each fiscal year.

13.5   Tax Elections.  The Partnership shall make such tax elections from time to time as the General Partner determines.  In the event of a Transfer of all or part of the Partnership Interest of any Partner or of the distribution of Partnership property to a Partner, the Partnership, in the sole discretion of the General Partner, may elect pursuant to Section 754 of the Code to adjust the basis of the assets of the Partnership.

**ARTICLE XIV**
**DISSOLUTION AND LIQUIDATION**

14.1    <u>Events Causing Termination</u>.  The Partnership shall be dissolved and terminated and its affairs shall be wound up upon the happening of the first to occur of the following:

(a)    The expiration of the term set forth in Article III;

(b)    The sale or other disposition of all or substantially all of the Partnership's assets;

(c)    The Bankruptcy of the Partnership;

(d)    The resignation, withdrawal, Bankruptcy, expulsion, or death of all General Partners, unless a substitute General Partner has been admitted as provided in Article VIII within ninety (90) days;

(e)    The decision of the General Partner and Limited Partners holding a majority of all Percentage Interests held by Limited Partners to dissolve and terminate the Partnership; or

(f)    The final decree of a court of competent jurisdiction that dissolution and liquidation is required.

14.2    <u>Continuation of Business</u>.  In the event of a vacancy in a General Partner position for any reason, if there remains at least one General Partner or a substitute General Partner is admitted pursuant to Article VIII within ninety (90) days, the business of the Partnership shall not be wound up but shall continue without interruption, and the business of the Partnership and the affairs of the Partners shall continue to be governed by this Agreement.

14.3    <u>Liquidation and Winding Up</u>.  Upon the dissolution and termination of the Partnership pursuant to Section 14.1, the General Partner, or if there be no General Partner then acting, the Person appointed by Limited Partners holding a majority of the Percentage Interests held by Limited Partners that are entitled to vote, or if no such Person shall be appointed, the Person appointed by a decree of court to carry out the winding up of the affairs of the Partnership, shall wind up the affairs of the Partnership and shall promptly proceed to liquidate the Partnership, and the assets and property of the Partnership shall be applied in the following order of priority:

(a)    To the payment of the debts and obligations of the Partnership, including, to the extent permitted by law, obligations to Partners who are creditors;

(b)     Next, to the setting up of any reserves which the General Partner, in its sole discretion, reasonably deems necessary for any contingent or unforeseen liabilities or obligations of the Partnership;

(c)     Next, to the Partners in proportion to, and to the extent of, their Undistributed Preference Amounts; and

(d)     Next, to the Partners in proportion to their positive Capital Account balances.

For purposes of determining the rights of Partners to distributions in dissolution, in the event of a distribution of property in kind, such property shall be assumed to have been sold at its fair market value, as determined by the General Partner in its reasonable discretion, with any gain or loss allocated to the Partners in accordance with Article VI.

## ARTICLE XV
## PARTNERSHIP MEETINGS

15.1     <u>Meetings</u>.  Meetings of the Partners for any purpose may be called by the General Partner and shall be called by the General Partner within fifteen (15) days following receipt of a request in writing signed by Limited Partners holding ten percent (10%) or more of all Percentage Interests.  A request by Limited Partners for a meeting shall state the purpose of the meeting and the matters proposed to be acted upon at such meeting.  All meetings shall be held at the principal office of the Partnership or at another location selected by the General Partner that is reasonably convenient for the Limited Partners as a whole.

15.2     <u>Notice</u>.  Notice of any such meeting shall be given to the Limited Partners not less than fifteen (15) days or more than sixty (60) days before the date of the meeting.  Such notice shall state the place, date, hour, and purpose of the meeting.

15.3     <u>Proxies; Voting by Written Designation</u>.  Each Limited Partner may authorize any other Partner or Partners to act for him, her, or it by written proxy in all matters in which a Limited Partner is entitled to act.  In addition, a Limited Partner may designate in writing the manner in which he desires that his vote be cast, which writing must be received by the General Partner prior to the meeting.  Partners of record on the date of the meeting shall be entitled to vote.

## ARTICLE XVI
## AMENDMENTS

This Agreement may be amended at a meeting of the Partners called for such purpose upon the approval of all General Partners and Limited Partners holding a majority of the Percentage Interests held by Limited Partners that are entitled to vote.  In addition, this Agreement may be amended solely by the General Partner without a meeting and without Limited Partner approval (a) as necessary to effect the reconstitution of the Partnership under

the laws of the state of Delaware, as provided in Section 2.1, (b) as necessary to cause the Partnership and/or this Agreement to comply with NBA Regulations, (c) as necessary to permit a Limited Partner that is subject to regulation under the Bank Holding Company Act of 1956, as amended, to comply with applicable laws and regulations, provided that any such amendment shall not adversely affect the economic rights or the right to vote of any other Limited Partner, or (d) otherwise to effect changes that are not material in overall effect. Notwithstanding the foregoing, (x) no amendment shall adversely affect the economic rights of any Partner under this Agreement without the consent of the affected Partner and (y) without the consent of all Partners, no amendment shall alter the allocation of Partnership management responsibilities or control nor affect the limited liability of the Limited Partners or the status of the Partnership as a partnership for federal income tax purposes.

## ARTICLE XVII
## MISCELLANEOUS

17.1    Other Business Ventures.  Any Partner, including the General Partner, may engage in or possess an interest in other business ventures of every nature and description, independently or with others, whether such ventures are competitive with the Partnership or otherwise; and neither the Partnership nor the Partners shall have any right by virtue of this Agreement in or to such independent ventures or to the income or profits derived therefrom and no Partner shall have the obligation to bring any business opportunity to the Partnership or to any other Partner.  In furtherance, and not in limitation, of the foregoing, if the General Partner or any of its Affiliates is presented with the opportunity to purchase an interest in another professional sports team or other business in the sports or entertainment industries, it will not be required to offer any interest therein to the Partnership or any Partner.

17.2    Binding Provisions.  The covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the heirs, executors, administrators, personal representatives, successors, and assigns of the respective parties hereto.

17.3    Counterparts.  This Agreement may be executed in several counterparts, all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties have not signed the same counterpart.

17.4    Separability of Provisions.  Each provision of this Agreement shall be considered separable and, if, for any reason, any provision or provisions hereof are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of, or otherwise affect, those portions of this Agreement which are valid.

17.5    Headings and Titles.  Article and section headings and titles are for descriptive purposes and convenience of reference only and shall not control or alter the meaning of this Agreement as set forth in the text.

17.6    Notices.  All notices under this Agreement shall be in writing and shall be given to the Partners entitled thereto by personal service or by certified or registered mail, return

receipt requested:  to a Limited Partner, at the address on file with the General Partner, or as changed by notice given pursuant hereto; and to a General Partner, at the principal office of the Partnership.

17.7    Entire Agreement.  This Agreement is the final integration of the agreement of the parties with respect to the matters covered by it and supersedes any prior understanding or agreement, oral or written, with respect thereto.

17.8    Rights of Third Parties.  Notwithstanding anything to the contrary set forth herein, nothing contained in this agreement is intended to benefit any party other than the Partners and their permitted successors and assigns, and this Agreement shall be enforceable by no other party.

17.9    Gender, Etc.  Except where the context requires otherwise, the use of terminology of any of the masculine, feminine, or neuter genders shall include all such genders, and the use of the singular number shall include the plural and vice versa.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

GENERAL PARTNER:

TAYLOR SPORTS GROUP, INC.

By _____
        Glen A. Taylor
        Its President

INITIAL LIMITED PARTNER:

TAYLOR CORPORATION

By _____
        Glen A. Taylor
        Its Chief Executive Officer

GP:48319 v4

28

## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP
## LIMITED PARTNERSHIP AGREEMENT

### LIMITED PARTNER SIGNATURE PAGE AND POWER OF ATTORNEY
(Corporation, Partnership, Trust, or other Entity Investor)

The undersigned hereby executes the Limited Partnership Agreement (the "Agreement") of Minnesota Timberwolves Basketball Limited Partnership, a Minnesota limited partnership (the "Partnership"), and hereby agrees to all of its terms and provisions including, without limitation, the grants of the powers of attorney contained in Article XII thereof. The undersigned hereby appoints Taylor Sports Group, Inc., and the Chief Executive Officer of Taylor Sports Group, Inc., with full power of substitution, his true and lawful attorneys-in-fact and agents, with all the powers and authority set forth in the Agreement, including without limitation, in his name, place and stead to make, execute, sign, acknowledge, swear to, deliver and file the Limited Partnership Agreement, or any other certificate reflecting the same, and amendments thereto for the purpose of admitting the undersigned and others as Limited Partners in the Partnership. The undersigned hereby joins and executes the Agreement and hereby authorizes this Signature Page to be attached thereto. The power of attorney granted hereby and by Article XII of the Agreement shall be deemed to be coupled with an interest, shall be irrevocable and shall survive the death or legal disability of the undersigned.

Name of Entity (type or print): _____

Signature:     By _____

Name (type or print): _____

Title or Capacity: _____

Address: _____

_____

_____

Capital Contribution: $ _____

Date: _____, 1994

GP:48319 v4

## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP
## LIMITED PARTNERSHIP AGREEMENT

### LIMITED PARTNER SIGNATURE PAGE AND POWER OF ATTORNEY
(Individual Investor)

The undersigned hereby executes the Limited Partnership Agreement (the "Agreement") of Minnesota Timberwolves Basketball Limited Partnership, a Minnesota limited partnership (the "Partnership"), and hereby agrees to all of its terms and provisions including, without limitation, the grants of the powers of attorney contained in Article XII thereof. The undersigned hereby appoints Taylor Sports Group, Inc., and the Chief Executive Officer of Taylor Sports Group, Inc., with full power of substitution, his true and lawful attorneys-in-fact and agents, with all the powers and authority set forth in the Agreement, including without limitation, in his name, place and stead to make, execute, sign, acknowledge, swear to, deliver and file the Limited Partnership Agreement, or any other certificate reflecting the same, and amendments thereto for the purpose of admitting the undersigned and others as Limited Partners in the Partnership. The undersigned hereby joins and executes the Agreement and hereby authorizes this Signature Page to be attached thereto. The power of attorney granted hereby and by Article XII of the Agreement shall be deemed to be coupled with an interest, shall be irrevocable and shall survive the death or legal disability of the undersigned.

Signature: _____

Name (type or print): _____

Signature of Joint Investor, if any: _____

Name of Joint Investor (type or print): _____

Address: _____

_____

_____

Capital Contribution: $ _____

Date: _____, 1994

GP:48319 v4

30

AMENDMENT
TO THE
LIMITED PARTNERSHIP AGREEMENT
OF
MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

The undersigned, being the sole general partner of Minnesota Timberwolves Basketball Limited Partnership (the "Partnership"), pursuant to Article XVI of the Partnership's Limited Partnership Agreement (the "Agreement"), as previously entered into effective the 28th day of September, 1994, does hereby amend the Agreement to effect a clarifying change that is not material in its overall effect, as follows:

1.      Section 6.2 is hereby amended to read as follows:

6.2     <u>Percentage Interests</u>.

(a)     <u>Initial Percentage Interests</u>.  The Percentage Interests of the Partners on the Closing Date will be proportionate to Capital Contributions made by the Partners pursuant to Section 5.1.

(b)     <u>Adjustments of Percentage Interests</u>.  The Percentage Interests of the Partners may be adjusted as a result of future Capital Calls as provided in Section 5.2 and shall be adjusted in the event of the admission of an additional Partner pursuant to Article XI or any other event that changes the Partners' respective interests in Partnership capital, including those reflected in adjustments to the Capital Account balances of the Partners pursuant to Section 6.1.

Dated effective: ___Oct 4___, 1995

                        GENERAL PARTNER:

                        TAYLOR SPORTS GROUP, INC.

                        By ___Glen Taylor___
                           Glen A. Taylor
                           Its President

GP:226067 v1

SECOND AMENDMENT
TO THE
LIMITED PARTNERSHIP AGREEMENT
OF
MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

The undersigned, being the sole general partner and a majority of the limited partners of Minnesota Timberwolves Basketball Limited Partnership (the "Partnership"), pursuant to Article XVI of the Partnership's Limited Partnership Agreement (the "Agreement"), as previously entered into effective the 28th day of September, 1994, does hereby amend the Agreement to effect a clarifying change that is not material in its overall effect, as follows:

1.      Section 5.2 (e) is hereby amended to read as follows:

        5.2 (e) Loan Treatment.  If the General Partner elects to apply the provisions of this paragraph (e), then the additional Capital Contributions made in response to the Capital Call shall thereafter not be treated as Capital Contributions, but shall constitute loans from such Partners to the Partnership.  Such Partner loans shall be governed by the provisions of Section 5.5, below.

2.      Section 5.5 is hereby amended to read as follows:

        5.5     Loans from Partners to Partnership.  Subject to the limitations set forth in Section 7.2 of this Agreement, the General Partner, or with the consent of the General Partner, a Limited Partner, may loan funds to the Partnership in excess of such Partner's Capital Contribution to pay expenses of the Partnership.  Such loans, if any, shall constitute loans to the Partnership and, in the discretion of the General Partner and the lending Partner, may be evidenced by promissory notes. Such loans shall not be treated as Capital Contributions for any purpose hereunder, nor entitle the Partner to any increase in his share of the income, profits, gains, losses, or distributions of the Partnership.  Such Partner loans shall be repaid by the Partnership in the same order of priority as other unsecured creditors of the Partnership.  Interest on Partner loans shall be considered an operating expense of the Partnership and may be repaid by means of additional Partner loans.

Dated effective: June   7  , 2010

(signature page follows)

1

GENERAL PARTNER:

TAYLOR SPORTS GROUP, INC.

By _____

Glen A. Taylor

Its President

LIMITED PARTNERS (representing a
majority of the limited partnership interests):

TAYLOR CORPORATION

By _____

Glen A. Taylor

Its Chairman

_____

Glen A. Taylor, Individually

2

# THIRD AMENDMENT
## TO
## LIMITED PARTNERSHIP AGREEMENT
## OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

This Third Amendment to Limited Partnership Agreement ("***Amendment***") is made to be effective as of April 15, 2016 ("***Effective Date***"), by and among Taylor Sports Group, Inc. a Minnesota corporation (the "***General Partner***"), those persons identified on Exhibit A (collectively the "***Original Limited Partners***"), and the Minnesota Timberwolves Basketball Limited Partnership, a Minnesota limited partnership (the "***Partnership***").

## RECITALS

A. The General Partner and the Limited Partners constitute all of the Partners of the Partnership and together with the Partnership, are parties to that certain Limited Partnership Agreement dated September 28, 1994, as amended by that Amendment to the Limited Partnership Agreement of Minnesota Timberwolves Basketball Limited Partnership dated October 5, 1995, and that Second Amendment to the Limited Partnership Agreement of Minnesota Timberwolves Basketball Limited Partnership dated June 17, 2010 (collectively, the "***Limited Partnership Agreement***"); and

B. The Partners hereby desire to further amend the Limited Partnership Agreement pursuant to the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the covenants and agreements contained herein, and for other good and valuable consideration, the parties agree as follows:

1. <u>Confirmation of Partnership Interests</u>. All the parties hereto agree that as of the Effective Date the Partners' Partnership Interests and Percentage Interests shall be as set forth on Exhibit B attached hereto.

2. <u>Article I – New Definitions</u>. The following new definitions shall be added to Article I of the Limited Partnership Agreement:

"1.7A <u>Change in Control</u>. "***Change in Control***" means either (i) a Control Sale, or (ii) a sale of substantially all of the assets of the Partnership."

"1.9C <u>Control Sale</u>. "***Control Sale***" means a sale, exchange or other disposition (for cash or property with a discernible cash value) by one or more members of the Taylor Group, in a single transaction or series of related transactions, to any Person who is not a member of the Taylor Group, of Partnership Interests which includes a majority of all the General Partnership Interests (including the indirect sale, exchange or other disposition of such Partnership Interests through the sale, exchange or other disposition (for cash or property with a discernible cash value) of interests in any entity that owns, directly or indirectly, such Partnership Interests)."

"1.9D <u>Effective Date</u>. "***Effective Date***" means April 15, 2016 the date of the Third Amendment to the Limited Partnership Agreement of the Minnesota Timberwolves Basketball Limited partnership."

"1.9E  Family Group.  "***Family Group***" means, with respect to Glen A. Taylor (i) his spouse (whether current or former); (ii) his parents; (iii) his siblings; (iv) his descendants (whether natural or adopted); (v) the descendants (whether natural or adopted) of his grandparents; (vi) the descendants (whether natural or adopted) of the individuals identified in items (i) thorough (v) of this definition; (vii) and any trust created primarily for the benefit of any one or more of the individuals identified in items (i) through (vi) of this definition or for the benefit of Glen A. Taylor; and (viii) the estate of any individual identified in items (i) through (vi) of this definition and the estate of Glen A. Taylor."

"1.24A  Original Limited Partners.  "***Original Limited Partners***" means any Limited Partners of the Partnership immediately prior to the Effective Date."

"1.25B  Taylor Group.  "***Taylor Group***" means (i) Taylor Sports Group, Inc., (ii) Taylor Corporation, (iii) Glen A. Taylor, (iv) any member of the Family Group; (v) any trust (inter vivos or testamentary) created by Glen A. Taylor primarily for the benefit of himself or any one or members of the Family Group, (vi) any foundation created by Glen A. Taylor, including the Glen A. Taylor Foundation II, and (vii) the Affiliates and successors of any of the persons described in items (i) through (v) of this definition, including without limitation Taylor Holding Company, LLC, in case of items (i), (ii), and (vi) of this definitions, provided that the applicable entity remains under the control of any one or more of Glen A. Taylor or a member of the Family Group."

3.  Section 5.2(f) – Maximum Additional Capital Calls.  Section 5.2(f) of the Agreement shall be deleted in its entirety and replaced with the following new Section 5.2(f):

"(f)  Maximum Additional Capital Calls/Capital Call Exceptions.

(i)  The maximum amount for which the General Partner may make additional Capital Calls pursuant to this Section 5.2 shall be thirty percent (30%) of the aggregate Capital Contributions made by the Partners pursuant to Section 5.1.  The forgoing limitation shall apply regardless of whether the amounts received in response to such Capital Calls are treated as Capital Contributions pursuant to paragraph (d) above, or loans pursuant to paragraph (e), above.  As of the Effective Date, no Capital Call has been made by the General Partner pursuant this Section 5.2 and the aggregate Capital Contributions made by the Partners (including Persons, if any, admitted as Substitute Partners on the Effective Date) pursuant to Section 5.1 is $152,154,434.

(ii)  Notwithstanding any contrary provision of this Agreement, the amount of any Capital Call shall be reduced, but not below zero, by the following items, if applicable (collectively the "***Capital Call Exceptions***"):

(A)  In the event of a Capital Call during a fiscal year of the Partnership in which the Partnership both has (or would reasonably be expected to have) a net loss and has been (or would reasonably be expected to be) subject to the NBA's "luxury tax" related to player salaries (or any successor to such luxury tax under NBA rules), then the dollar amount equivalent to the luxury tax and the amount of player salaries that exceeds the luxury tax threshold shall be deducted from the amount of the calculation of Team loss or cash shortfall that was used to calculate the amount of the Capital Call. It is understood and agreed that no such capital call will be made for the specific purpose of funding any such excess luxury tax amounts in any year in which the Partnership does not have (and would not reasonably be expected to have) a net operating

2

loss. The adjustment under this provision shall be referred to as the "***Excess Player Salary Exception***"; and

(B)     In the event of a Capital Call during a fiscal year of the Partnership in which the Partnership both has (or would reasonably be expected to have) a net loss and has paid, in the aggregate, more than $500,000 in compensation to individuals who are under contract to perform head coaching and/or head of basketball operations responsibilities for the Partnership but who are either no longer employed by the Partnership or have been reassigned by the Partnership to a role of lesser responsibility, then with respect to such individuals, only the first $500,000 of the aggregate compensation may be included in the calculation of the amount of team loss or cash shortfall that was used to calculate the amount of the Capital Call. It is understood and agreed that no such capital call will be made for the specific purpose of funding any such excess compensation amounts in any year in which the Partnership does not have (and would not reasonably be expected to have) a net operating loss. The adjustment under this provision shall be referred to as the "***Excess Coaching/Basketball Operations Salary Exception***";

(C)     Set forth on the attached Schedule B is an example of the calculation of Capital Call Exceptions and how it would operate to reduce the Capital Call exposure of Limited Partners when applicable. In the event a Capital Call is reduced by either of the Capital Call Exceptions, any one or more members of the Taylor Group who is a Partner may elect, in their sole discretion, to provides funds in the aggregate amount of such reduction, by any one or more of the following means: (1) to make equity contributions and such equity contributions shall not either dilute or otherwise reduce the Percentage Interests of the Limited Partners or give rise to a Preference Amount or other preferred return on the part of the contributing Partner, or (2) to make loans to the Partnership which comply with Section 5.5 and which contain terms that are no less favorable to the Partnership than terms that might be obtained in a comparable transaction with an unrelated third party (the "***Exception Loan***"); provided, however, the original principal amount of such Exception Loan shall not exceed that amount that, when added to the other indebtedness of the Partnership and any of its Holdcos (as defined in the NBA Debt Policies) which constitutes Enterprise Indebtedness (as defined in the NBA Debt Policies) at the time of such Exception Loan, will exceed the maximum amount of the Partnership's Enterprise Indebtedness, as defined in, and permitted under the NBA Debt Policies in effect at such time."

4. Section 6.7 - Distributions Upon Dissolution and Winding Up. Section 6.7 of the Agreement shall be deleted in its entirety and replaced with the following new Section 6.7:

"6.7 Distributions Upon Dissolution and Winding Up. At the time of the dissolution and winding up of the Partnership, following the allocation of all Partnership Income and Partnership Loss and the payment of all Partnership obligations, the remaining assets shall be distributed to the Partners in the following order (a) first, in proportion to, and to the extent of, their Undistributed Preference Amounts, and (b) then in proportion to their respective Percentage Interests."

5. Section 7.4 - Compensation to the General Partner. The following shall be added to the end of Section 7.4 of the Agreement:

3

"Notwithstanding the forgoing, the amount of the management fee payable for the fiscal year of the Partnership which includes the Effective Date and for each fiscal year thereafter, shall not exceed $2,400,000.00 per fiscal year (and, for the avoidance of doubt, no amounts in excess thereof shall accrue or otherwise be payable to the General Partner in any following fiscal year). The General Partner represents and warrants that, as of the Effective Date, there are no outstanding management fees accrued and owing under this Section 7.4 with respect to fiscal years ending prior to the Effective Date."

6. New Section 9.8 – Team Benefits. The following new Section 9.8 is added to the Limited Partnership Agreement:

"9.8    Team Benefits. Any Original Limited Partner and any Person, including any Partner who, on or after the Effective Date, purchases a Partnership Interest and immediately thereafter owns a Partnership Interest equal to at least five percent (5%) of the aggregate Partnership Interests (a "*5% Partner*") shall be provided, at a minimum, the following benefits (the "***Team Benefits***") by the Partnership:

(a)    Upon request, monthly and quarterly operating reports of the Partnership;

(b)    Annual audited financial reports of the Partnership (including balance sheet and statements of income, and accompanying notes), prepared in accordance with U.S. generally accepted accounting principles, together with such other financial statements as may be available to the General Partner;

(c)    The opportunity to participate as an observer at all board meetings, if any, of the Partnership, at the sole cost and expense of the 5% Partner;

(d)    Complimentary tickets to Team and Minnesota Lynx games in the home arena of the Team, from time to time as determined by the Partnership;

(e)    Complimentary access to a suite or comparable space in the Team's home arena from time to time as determined by the Partnership;

(f)    The opportunity to travel with the Team from time to time as determined by the Partnership; and

(g)    Complimentary tickets to the NBA All-Star Game."

7. New Section 10.7 – Tag-Along Rights.

"10.7    Tag-Along Rights.

(a)    Participation Right. Subject to Section 10.1, in the event that one or members of the Taylor Group (which includes one or more persons that collectively own, directly or indirectly, a majority of the General Partnership Interests) proposes to enter into a Control Sale (such participating members of the Taylor Group, collectively the "***Selling Partner***"), and the Selling Partner does not exercise the Drag-Along Right (defined below) with respect to such sale (the "***Tag-Along Sale***"), then each Limited Partner (the "***Tag-Along Partners***") shall have the right (the "***Tag-Along Right***") to elect to participate in such Tag-Along Sale on and pursuant to the terms and conditions set forth in this Section 10.7 at the same price and on the same other terms and conditions

4

applicable to the Selling Partner (other than the non-purchase price terms applicable to the General Partnership Interests (for the avoidance of doubt, the Limited Partnership Interests will receive the same purchase price, on a per-Percentage Interest basis, as is applicable to the General Partnership Interests)).

(b) <u>Sale Notice</u>. The Selling Partner shall provide each of the Tag-Along Partners with written notice of the proposed Tag-Along Sale (the "***Sale Notice***") within ten (10) days following execution of any definitive agreement (by all the parties thereto) entered into with respect to the Tag-Along Sale. The Sale Notice shall describe in reasonable detail (i) the Partnership Interests to be sold (directly or indirectly) by the Selling Partner; (ii) the name of the proposed buyer (the "***Prospective Purchaser***"); (iii) the purchase price and the other material terms and conditions of the sale; (iv) the proposed date, time and location of the closing of the sale; and (v) copy of the definitive agreement so entered into or if not yet executed any form of agreement proposed to be executed in connection therewith.

(c) <u>Exercise</u>.

(i) To exercise the Tag-Along Right, the Tag-Along Partner shall give written notice (the "***Tag-Along Notice***") to the Selling Partner of such election and specifying the Partnership Interests it proposes to sell within fifteen (15) days after receiving the Sale Notice from the Selling Partner. The offer of each Tag-Along Partner set forth in a Tag-Along Notice shall be irrevocable, and, to the extent such offer is accepted, such Tag-Along Partner shall be bound and obligated to sell in the proposed Tag-Along Sale on the terms and conditions set forth in this Section 10.7. Subject to Section 10.7(d), each Tag-Along Partner shall be entitled to sell in the contemplated Tag-Along Sale up to all of the Partnership Interest owned by such Tag-Along Partner.

(ii) Each Tag-Along Partner that timely and properly delivers a Tag-Along Notice (electing to exercise the Tag-Along Right) in accordance with this Section 10.7(b) is referred to as an "***Electing Partner***". Each Tag-Along Partner who does not timely and properly deliver a Tag-Along Notice in compliance with this Section 10.7(b) shall be deemed to have waived all of such Tag-Along Partner's rights to participate in such Tag-Along Sale.

(d) <u>Participation Procedures</u>.

(i) With respect to any Tag-Along Sale, the Selling Partner shall use commercially reasonable efforts to obtain the agreement of the Prospective Purchaser to the participation of each Electing Partner in such contemplated Tag-Along Sale it being understood that the Prospective Purchaser is not required to purchase Partnership Interests in excess of the number set forth in the Sale Notice.

(ii) In the event the Prospective Purchaser elects to purchase less than all of the Partnership Interests sought to be sold by the Electing Partners and the Selling Partner, the Partnership Interest to be sold to the Prospective Purchaser by the Selling Partner and each Electing Partner shall be determined as follows (it being understood that in no event will the amount so sold be less than the Partnership Interests set forth in the Sale Notice) (the "***Maximum Tag Amount***"):

(A) First, each Electing Partner shall be entitled to sell the full amount set forth in their respective Tag-Along Notice, which for the avoidance of doubt may be all of an Electing Partner's Partnership Interests (the "***Elected Tag Amount***") and

5

if the aggregate amount of such Elected Tag Amounts exceeds the Maximum Tag Amount, the Selling Partner may only proceed with the Tag-Along Sales if it complies with Section 10.7(d)(iii); and

(B) Second, the Selling Partner shall sell that amount of Partnership Interests, if any, necessary to equal the Maximum Tag Amount after taking into account the Partnership Interests sold by the Electing Partners in Section 10.7(d)(ii)(A).

(iii) The Selling Partner shall not (directly or indirectly) Transfer any of its Partnership Interests to any Prospective Purchaser pursuant to such Tag-Along Sale if either (x) such Prospective Purchaser declines to allow the participation of any Electing Partner in accordance with the terms hereof or (y) each Electing Partner that desires to sell all of its Partnership Interests in such sale is not able to do so because of the Maximum Tag Amount, unless in connection with such Tag-Along Sale, the Selling Partner purchases the Partnership Interest from such Electing Partner which such Electing Partner would have been entitled (and elected) to sell pursuant to this Section 10.7, in each case at the same price and on the same terms and conditions on which such Partnership Interests were sold to the Prospective Purchaser.

(e) <u>Fees, Expenses</u>. Each Electing Partner transferring Partnership Interests pursuant to this Section 10.7 shall pay its Proportionate Share of the expenses incurred by the Selling Partner in connection with such Tag-Along Sale to the extent that such expenses are incurred for the benefit of all Partners participating in such sale (expenses that are incurred by or on behalf of the Selling Partner for the Selling Partner's sole benefit shall not be allocated among the Electing Partners). The term "***Proportionate Share***", means, with respect to each Electing Partner, that percentage computed by dividing such Electing Partner's share of the sale proceeds with respect to such Tag-Along Sale by the aggregate sale proceeds paid to all Partner's participating in such Tag-Along Sale.

(f) <u>Conditions to Sale, Indemnification</u>.

(i) Each Electing Partner shall make or provide the same representations, warranties, covenants, indemnities and agreements as the Selling Partner makes or provides in connection with the Tag-Along Sale (except that in the case of representations, warranties, covenants, indemnities and agreements pertaining specifically to the Selling Partner, the Electing Partner shall make the comparable representations, warranties, covenants, indemnities and agreements pertaining specifically to itself).

(ii) Each Electing Partner shall be severally obligated to join based on its Proportionate Share in any indemnification or other obligation the Selling Partner has agreed to in connection with such Tag-Along Sale (other than any such obligations that relate specifically to a particular Partner, such as indemnification with respect to representations and warranties given by a Partner regarding such Partner's title to and ownership of Partnership Interests); and any escrow of proceeds of any such transaction shall be withheld based on each participating Partner's Proportionate Share. With respect to any indemnification required under the preceding sentence, each Partner's indemnification obligations shall be limited to the total sale proceeds of such Partner in connection with the Tag-Along Sale (and shall be further limited to the Partner's Proportionate Share of any applicable caps, deductibles or other limitations on indemnification). Except for breaches of its own representations, warranties and

6

covenants, no Partner shall be liable for any amount in excess of its Proportionate Share of any indemnification obligation in excess of any amounts placed in escrow, and all liabilities among the Partners shall be several liabilities and not joint and several. Each Partner shall enter into any indemnification or contribution agreement reasonably requested by the Selling Partners to ensure compliance with this Section 10.7(e)(ii)."

8. New Section 10.8 – Drag-Along Rights.

"Section 10.8 Drag-Along Rights.

(a) General. Subject to Section 10.1, if one or members of the Taylor Group (which includes one or more persons that collectively own, directly or indirectly, a majority of the General Partnership Interests), desires to approve or consummate a Change in Control (a "***Drag-Along Sale***") such members of the Taylor Group (the "***Offering Group***"), shall have the right (the "***Drag-Along Right***") to require each of the other Partners (each, a "***Dragged Partner***"), to approve and participate in the Drag-Along Sale on and pursuant to the terms and conditions set forth in this Section 10.8 and on the same terms and for the same price that the Offering Group will participate (other than the non-purchase price terms applicable to the General Partnership Interests (for the avoidance of doubt, the Limited Partnership Interests will receive the same purchase price, on a per-Percentage Interest basis, as is applicable to the General Partnership Interests)), without complying with Section 10.3. If the Drag-Along Right is timely and properly exercised by the Offering Group, each Dragged Partner shall vote all of his, or its Partnership Interests or give written consent with respect thereto, including consenting to the admission of the prospective buyer as a General Partner or, as the case may be, sell all of his, or its Partnership Interests and take all such other action with respect to the Drag-Along Sale, as in any case shall be reasonably directed by the Offering Group to effect the Drag-Along Sale in accordance with this Section 10.8.

(b) Exercise; Drag-Along Notice; Control Sale. To exercise the Drag-Along Right, the Offering Group shall, not less than fifteen (15) days prior to the consummation date of the Drag-Along Sale, give written notice (the "***Drag-Along Notice***") to the Dragged Partners, which notice shall set forth in reasonable detail the name or names of the proposed purchaser (the "***Drag Purchaser***"), the Partnership Interest to be sold (directly or indirectly) by the Offering Group, the purchase price and other material terms and conditions of the Drag-Along Sale and the anticipated closing date. If the Drag-Along Sale involves a Control Sale, the Dragged Partner shall, on the consummation date of the Drag-Along Sale, sell all of their Partnership Interests if so requested in the Drag-Along Notice or if not so requested each Dragged Partner and the Offering Group shall sell that Partnership Interest determined as follows:

(i) *Dragged Partner Election.* Each Dragged Partner may elect to sell all (but not less than all) of its Partnership Interests (the "***Elected Drag Amount***") by providing written notice of such election to the Offering Group within seven (7) days of the date of the Drag-Along Notice (the "***Electing Drag Notice***"). Each Dragged Partner that timely and properly issues an Electing Drag Notice (an "***Electing Dragged Partner***") shall be entitled to sell all of their respective Partnership Interests in such Drag-Along Sale.

(ii) *Elected Drag Amounts More Than Purchaser Will Buy.* If the aggregate amount of such Elected Drag Amounts is more than the maximum amount the Drag

7

Purchaser will purchase in such Drag-Along Sale (the "***Maximum Purchase Amount***") then:

(A)     the Offering Group Partner may only proceed with the Drag-Along Sale if the Offering Group purchases the Partnership Interest from each Electing Dragged Partner which such Electing Dragged Partners would have been entitled (and elected) to sell pursuant to this Section 10.8 (i.e., all of the Partnership Interests of such Electing Dragged Partner) at the same price and on the same terms and conditions on which such Partnership Interests were sold to the Drag Purchaser; and

(B) each of the other Dragged Partners who do not timely and properly deliver an Electing Drag Notice in compliance with this Section 10.7(b)(i) (a "***Non-Electing Dragged Partner***") shall not be entitled to, nor shall they, sell any of its Partnership Interests in such Drag-Along Sale except as and to the extent provided in Section 10.8(b)(iii) below.

(iii)     *Maximum Purchase Amount More Than Desired Sale Amount by Electing Drag Partners and Offering Group.* If the Maximum Purchase Amount is more than the sum of (x) the aggregate amount of the Elected Drag Amounts plus (y) the amount of the Partnership Interests proposed to be sold by the Offering Group itself (collectively the "***Desired Sale Amount***"), then:

(A)     Each Electing Dragged Partner shall sell Partnership Interests equal to their respective Elected Drag Amounts;

(B)     The Offering Group shall sell all the Partnership Interests it proposed to sell; and

(C)     With respect to the balance of Maximum Purchase Amount after taking into account the sales in Sections 10.8(b)(iii)(A) and (B) (the "***Remaining Amount***"), each Non-Electing Dragged Partner shall sell a portion of the Partnership Interest held by such Non-Electing Dragged Partner determined by multiplying the Partnership Interest held by each such Non-Electing Dragged Partner by a fraction (A) the numerator of which is equal to the Remaining Amount, and (B) the denominator of which is equal to the aggregate Partnership Interests held by all the Non-Electing Dragged Partners.

An example of the computation is clause (C) is as follows:  assume the Drag Purchaser's Maximum Purchase Amount is 90% and the Desired Sale Amount of the Electing Drag Partners and the Offering Group is 80%; therefore, the Remaining Amount to be sold is 10%.  There are two Non-Electing Drag Partners, A who owns a 5% Partnership Interest and B who owns a 15% Partnership Interest.  A will sell a 2.5% Partnership Interest (5% Partnership Interest x 50% [10% Remaining Amount, *divided* by 20% aggregate Partnership Interests of A and B]) and B will sell a 7.5% (15% Partnership Interest x 50% [10% Remaining Amount, *divided* by 20% aggregate Partnership Interests of A and B]).

(iv)     *Maximum Purchase Amount Less Than Desired Sale Amount by Electing Drag Partners and Offering Group.*  If the Maximum Purchase Amount is less than the Desired Sale Amount but more than the aggregate amounts of such Elected Drag Amounts, then, the Non-Electing Dragged Partners shall not sell any of their Partnership Interests, and

8

(A)     Each Electing Dragged Partner shall sell Partnership Interests equal to their respective Elected Drag Amounts; and

(B)     The Offering Group shall sell that amount of Partnership Interests, if any, necessary to equal the Maximum Purchase Amount after taking into account the Partnership Interests sold by the Electing Dragged Partners in Section 10.8(b)(iv)(A).

(c)     Fees, Expenses. Each Dragged Partner transferring Partnership Interests pursuant to this Section 10.8 shall pay its Proportionate Share of the expenses incurred by the Offering Group in connection with such Drag-Along Sale to the extent that such expenses are incurred for the benefit of all Dragged Partners (and are not paid by the Partnership (in a Change of Control that is in an asset sale) it being understood and agreed that expenses that are incurred by or on behalf of the Offering Group for the Offering Group's sole benefit shall not be allocated among the Dragged Partners. The term "***Proportionate Share***", means, with respect to each Dragged Partner, that percentage computed by dividing such Dragged Partner's share of the sale proceeds with respect to such Drag-Along Sale by the aggregate sale proceeds paid to all Partner's participating in such Drag-Along Sale.

(d)     Conditions, Indemnification

(i)     Each Dragged Partner shall cooperate with the Offering Group in any Drag-Along Sale and shall take all actions and execute and deliver all purchase agreements and other documents and instruments as the Offering Group may reasonably request to effect such transaction.

(ii)     Each Drag-Along Partner shall make or provide the same representations, warranties, covenants, indemnities and agreements as the Offering Group makes or provides in connection with the Drag-Along Sale (except that in the case of representations, warranties, covenants, indemnities and agreements pertaining specifically to the Offering Group, the Drag-Along Partner shall make the comparable representations, warranties, covenants, indemnities and agreements pertaining specifically to itself).

(iii)     Each Dragged Partner shall be severally obligated to join based on its Proportionate Share in any indemnification or other obligation the Offering Group has agreed to in connection with such Drag-Along Sale (other than any such obligations that relate specifically to a particular Partner, such as indemnification with respect to representations and warranties given by a Partner regarding such Partner's title to and ownership of Partnership Interests); and any escrow of proceeds of any such transaction shall be withheld based on each participating Partner's Proportionate Share. With respect to any indemnification required under the preceding sentence, each Partner's indemnification obligations shall be limited to the total sale proceeds of such Partner in connection with the Drag-Along Sale (and shall be further limited to the Partner's Proportionate Share of any applicable caps, deductibles or other limitations on indemnification). Except for breaches of its own representations, warranties and covenants, no Partner shall be liable for any amount in excess of its Proportionate Share of any indemnification obligation in excess of any amounts placed in escrow, and all liabilities among the Partners shall be several liabilities and not joint and several. Each Partner shall enter into any indemnification or contribution agreement reasonably requested by the Selling Partners to ensure compliance with this Section 10.8(d)(ii)."

9

9. New Section 10.9 – Transfers of Interests in Limited Partners. The following new Section 10.9 is added to the Limited Partnership Agreement:

10.9 Transfers of Interests in Partners. A Partner that is not a natural person (an "***Organizational Partner***") may not cause or permit a Controlling Interest, or any other stock, membership interest, partnership, or other equity interest in itself (collectively "***Interest***") to be Transferred, directly or indirectly, to any Person other than Taylor Sports Group, Inc., Taylor Corporation or Glen A. Taylor or any of their respective Affiliates, without the prior written consent of the General Partner, which consent may be granted or withheld in the General Partner's sole discretion. On any breach of this Section 10.9, the purported Transfer shall be null and void *ab initio*. The Transfer restrictions set forth in this Section 10.9 shall not apply to the Transfer of a Controlling Interest or any other Interest in Taylor Sports Group, Inc., or Taylor Corporation, or any other member of the Taylor Group. The term "***Controlling Interest***" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

10. Section 14.3 - Liquidation and Winding Up. Sections 14.3(c) and 14.3(d) of the Agreement shall be deleted in their entirety and replaced with the following new Section 14.3(c):

"(c)    Next, to the Partners in accordance with Section 6.7."

11. Article XVI - Amendments. Article XVI of the Agreement shall be deleted in its entirety and replaced with the following new Article XVI:

"This Agreement may be amended at a meeting of the Partners called for such purpose upon the approval of all General Partners and the Limited Partners holding a majority of the Percentage Interests held by Limited Partners that are entitled to vote. In addition, this Agreement may be amended solely by the General Partner without a meeting and without Limited Partner approval (a) as necessary to effect the reconstitution of the Partnership under the laws of the state of Delaware, as provided in Section 2.1, (b) as necessary to cause the Partnership and/or this Agreement to comply with NBA Regulations, (c) as necessary to permit a Limited Partner that is subject to regulation under the Bank Holding Company Act of 1956, as amended, to comply with applicable laws and regulations, provided that any such amendment shall not adversely affect the economic rights or the right to vote of any other Limited Partner, or (d) otherwise to effect changes that are not material in overall affect. Notwithstanding the foregoing, (x) without the consent of the affected Partner in each case, no amendment shall (i) adversely affect the economic rights or other rights or benefits of a Partner under this Agreement, (ii) increase a Partner's obligations or liabilities under this Agreement, or (iii) disproportionately adversely affect a Partner relative to all other Partners and (y) without the consent of all Partners, no amendment shall alter the allocation of Partnership management responsibilities or control nor affect the limited liability of the Limited Partners or the status of the Partnership as a partnership for federal income tax purposes."

12. New Section 17.10 – Jurisdiction; Service of Process; Waiver of Jury. The following new Section 17.10 is added to the Limited Partnership Agreement:

"17.10    Jurisdiction; Service of Process; Waiver of Jury. Each of the parties hereto agrees that the United States District Court for Minnesota and any state court

10

sitting in the state of Minnesota (collectively, the "***Designated Courts***") shall have exclusive jurisdiction over the parties with respect to any dispute or controversy between the parties arising under or in connection with this Agreement, or the transactions contemplated herein or therein. The parties hereby submit to the exclusive jurisdiction of the Designated Courts, including the in personam jurisdiction of those courts, waive any objection to such jurisdiction on the grounds of improper venue or forum non conveniens or the absence of in personam jurisdiction and any similar grounds, irrevocably agree to be bound by any judgment rendered by any of the Designated Courts (subject to the right to appeal to appellate courts having jurisdiction over cases brought in the Designated Courts). Subject to applicable law, process in any such proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any Designated Court. Without limiting the foregoing and subject to applicable law, each party agrees that service of process on such party as provided in Section 17.10 hereof shall be deemed effective service of process on such party. Nothing herein shall affect the right of any party to serve legal process in any other manner permitted by law or at equity. The parties further agree that they shall not commence any legal action against any party arising under or in connection with this Agreement or the transactions contemplated herein in any court that is not one of the Designated Courts, unless the Designated Courts shall have determined that they lack subject matter jurisdiction to hear such action. Notwithstanding the foregoing, the parties agree that any final judgment rendered by a Designated Court may, so far as permitted under applicable Law, be enforced in any court. EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY."

13. Effect of Amendments. Except as expressly set forth in this Amendment, this Amendment shall not alter, amend or in any way affect any of the terms, conditions, covenants, obligations or agreements contained in the Limited Partnership Agreement, all of which are ratified and affirmed in all respects and shall continue to be in full force and effect.

14. Counterparts. This Amendment may be executed in several facsimile or original counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

15. Governing Law. This Amendment shall be governed by, interpreted, and enforced in accordance with the laws of the State of Minnesota.

16. Defined Terms. Capitalized terms used in this Amendment but not defined in this Amendment shall have the meanings set forth in the Limited Partnership Agreement.

17. Exhibits, Annexes and Schedules. The exhibits, annexes and schedules identified in this Amendment are incorporated herein by reference and made a part hereof.

*[End of Page]*
*[Signature Page Follows]*

11

# SIGNATURE PAGE TO
## THIRD AMENDMENT TO
## LIMITED PARTNERSHIP AGREEMENT OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: Glen A. Taylor
Title: President
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: President
Date: _____

## ORIGINAL LIMITED PARTNERS:

TAYLOR CORPORATION

By: _____
Name: Glen A. Taylor
Title: Chairmore
Date: May 2, 2016

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

By: _____
Name: _____
Title: _____
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____  May 2, 2016
Glen A. Taylor                        Date

_____
William F. Bieber                    Date

_____
Ralph Burnet                         Date

_____
John A. Bollero, Jr.                 Date

_____
R. Wynn Kearney, Jr.             Date

_____
William Sexton                      Date

List of Exhibits and Schedule
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

**SIGNATURE PAGE TO**
**THIRD AMENDMENT TO**
**LIMITED PARTNERSHIP AGREEMENT OF**
**MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP**

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL       TAYLOR SPORTS GROUP, INC.,
LIMITED PARTNERSHIP                         General Partner
By: Taylor Sports Group, Inc., General Partner

By: _____        By: _____
Name: <u>Glen A. Taylor</u>          Name: <u>Glen A. Taylor</u>
Title: <u>President</u>              Title: <u>President</u>
Date: _____     Date: _____

**ORIGINAL LIMITED PARTNERS:**

TAYLOR CORPORATION               Bill & Teri Popp, LLC

By: _____        By: _____
Name: _____     Name: _____
Title: _____      Title: _____
Date: _____     Date: _____

Let Me Sleep On It, Limited Partnership    Estate of Phillip Saunders
By: Let me Sleep On It, Inc., its General Partner
By: _____        By: _____
Name: <u>Thomas M. Vertin, President</u>   Name: _____
Title: _____      Title: <u>Personal Representative</u>
Date: <u>1/28/16</u>              Date: _____


_____        _____
Glen A. Taylor       Date        William F. Bieber      Date


_____        _____
Ralph Burnet        Date        John A. Bollero, Jr.     Date


_____        _____
R. Wynn Kearney, Jr.    Date       William Sexton      Date


<u>List of Exhibits and Schedule</u>
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: President
Date: _____

By: _____
Name: Glen A. Taylor
Title: President
Date: _____

## ORIGINAL LIMITED PARTNERS:

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

By: _____
Name: _____
Title: _____
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor                    Date

_____
William F. Bieber                 Date

_____
Ralph Burnet          4/14/16
                                  Date

_____
John A. Bollero, Jr.              Date

_____
R. Wynn Kearney, Jr.              Date

_____
William Sexton                    Date

List of Exhibits and Schedule
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: _Glen A. Taylor_____
Title: _President_____
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: _Glen A. Taylor_____
Title: _President_____
Date: _____

## ORIGINAL LIMITED PARTNERS:

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

By: _____
Name: _____
Title: _____
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: _Personal Representative_
Date: _____

_____
Glen A. Taylor                    Date

_____
William F. Bieber                 Date

_____
Ralph Burnet                      Date

*R. Wynn Kearney* 4-18-2016
_____
R. Wynn Kearney, Jr.              Date

_____
John A. Bollero, Jr.              Date

_____
William Sexton                    Date

List of Exhibits and Schedule
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

# SIGNATURE PAGE TO
## THIRD AMENDMENT TO
## LIMITED PARTNERSHIP AGREEMENT OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: President
Date: _____

By: _____
Name: Glen A. Taylor
Title: President
Date: _____

## ORIGINAL LIMITED PARTNERS:

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _Teri E. Popp_
Name: Teri E. Popp
Title: Co-Manager
Date: 4-18-2016

Let Me Sleep On It, Limited Partnership

By: _____
Name: _____
Title: _____
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor                    Date

_____
William F. Bieber                 Date

_____
Ralph Burnet                      Date

_____
John A. Bollero, Jr.              Date

_____
R. Wynn Kearney, Jr.             Date

_____
William Sexton                    Date

List of Exhibits and Schedule
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

**SIGNATURE PAGE TO**
**THIRD AMENDMENT TO**
**LIMITED PARTNERSHIP AGREEMENT OF**
**MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP**

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner.

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

**ORIGINAL LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

By: _____
Name: _____
Title: _____
Date: _____

Estate of Phillip Saunders

By: *Deborah K. Saunders PR*
Name: *Deborah K. Saunders*
Title: <u>Personal Representative</u>
Date: <u>4/27/16</u>

_____
Glen A. Taylor             Date

_____
William F. Bieber          Date

_____
Ralph Burnet               Date

_____
John A. Bollero, Jr.       Date

_____
R. Wynn Kearney, Jr.       Date

_____
William Sexton             Date

<u>List of Exhibits and Schedule</u>
Exhibit A -- Original Limited Partners
Exhibit B -- Partnership Interests
Schedule B -- Example Calculation of Capital Call Exceptions

## SIGNATURE PAGE TO
## THIRD AMENDMENT TO
## LIMITED PARTNERSHIP AGREEMENT OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

## ORIGINAL LIMITED PARTNERS:

TAYLOR CORPORATION

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

Estate of Phillip Saunders

By: _____
Name: _____
Title: _____
Date: _____

By: _____
Name: _____
Title: <u>Personal Representative</u>
Date: _____

Glen A. Taylor                    Date

William F. Bieber                    Date

Ralph Burnet                    Date

John A. Bollero, Jr.            4/29/16    Date

R. Wynn Kearney, Jr.            Date

William Sexton                    Date

<u>List of Exhibits and Schedule</u>
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

**SIGNATURE PAGE TO
THIRD AMENDMENT TO
LIMITED PARTNERSHIP AGREEMENT OF
MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP**

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

**ORIGINAL LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

By: _____
Name: _____
Title: _____
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: <u>Personal Representative</u>
Date: _____
        William F Bieber
_____
<u>William F Bieber</u>          4-28-16
William F. Bieber                Date

_____
Glen A. Taylor          Date

_____
Ralph Burnet          Date

_____
R. Wynn Kearney, Jr.          Date

_____
John A. Bollero, Jr.          Date

_____
William Sexton          Date

<u>List of Exhibits and Schedule</u>
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

## SIGNATURE PAGE TO
## THIRD AMENDMENT TO
## LIMITED PARTNERSHIP AGREEMENT OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

By: _____
Name: <u>Glen A. Taylor</u>
Title: <u>President</u>
Date: _____

### ORIGINAL LIMITED PARTNERS:

TAYLOR CORPORATION

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership

Estate of Phillip Saunders

By: _____
Name: _____
Title: _____
Date: _____

By: _____
Name: _____
Title: <u>Personal Representative</u>
Date: _____

_____
Glen A. Taylor            Date

_____
William F. Bieber            Date

_____
Ralph Burnet            Date

_____
John A. Bollero, Jr.            Date

_____
R. Wynn Kearney, Jr.            Date

_____
William Sexton            Date  4-25-16

List of Exhibits and Schedule
Exhibit A – Original Limited Partners
Exhibit B – Partnership Interests
Schedule B – Example Calculation of Capital Call Exceptions

**Third Amendment**
**To**
**Limited Partnership Agreement**
**of**
**Minnesota Timberwolves Basketball Limited Partnership**

## Exhibit A

## Original Limited Partners

1. Glen A. Taylor
2. Taylor Corporation
3. Bill & Teri Popp, LLC
4. William F. Bieber
5. Ralph Burnet
6. John A. Bollero, Jr.
7. R. Wynn Kearney, Jr.
8. Let Me Sleep on It, Limited Partnership
9. William Sexton
10. Estate of Phillip Saunders

**Third Amendment**
**To**
**Limited Partnership Agreement**
**of**
**Minnesota Timberwolves Basketball Limited Partnership**

Exhibit B

Confirmation of Partnership Interests

**Partner List**

**Minnesota Timberwolves Basketball Limited Partnership**

| | Partner | General Partnership Interest | Limited Partnership Interest | Total Partnership Interest (Percentage Interest) |
|---|---|---|---|---|
| 1 | TAYLOR SPORTS GROUP, INC. | 8.6344300% | | 8.6344300% |
| 2 | TAYLOR CORPORATION | | 47.0166300% | 47.0166300% |
| 3 | GLEN TAYLOR | | 31.5570000% | 31.5570000% |
| 4 | BILL & TERI POPP, LLC | | 3.3849700% | 3.3849700% |
| 5 | WILLIAM F BIEBER | | 1.5068400% | 1.5068400% |
| 6 | RALPH BURNET | | 1.5982700% | 1.5982700% |
| 7 | JOHN A. BOLLERO, JR | | 0.6795600% | 0.6795600% |
| 8 | WYNN KEARNEY, JR | | 0.9104500% | 0.9104500% |
| 9 | LET ME SLEEP ON IT, LIMITED PARTNERSHIP | | 1.4782300% | 1.4782300% |
| 10 | WILLIAM SEXTON | | 2.9564500% | 2.9564500% |
| 11 | ESTATE OF PHILLIP SAUNDERS | | 0.2771700% | 0.2771700% |
| | Totals | 8.6344300% | 91.3655700% | 100.0000000% |

# Third Amendment
# To
# Limited Partnership Agreement
# of
# Minnesota Timberwolves Basketball Limited Partnership

## Schedule B to Limited Partnership Agreement

## Example Calculation of Capital Call Exceptions

**Timberwolves Capital Call Protection**
Illustrative Financials for 2015/2016 Season below

| 2015/2016 Salary Cap | $70,000 |
|---|---|
| 2015/2016 Luxury Tax Cap | $84,700 |

| Timberwolves | | 9/30/2016 |
|---|---|---|
| National Television Revenues | $ | 34,132 |
| Other National Revenues | | 8,450 |
| Total National Revenues | $ | 42,582 |
| Local Television Revenues | $ | 22,845 |
| Other Local Revenues | | 43,603 |
| Player Transactions | | -- |
| Total Local Revenues | $ | 66,448 |
| Revenue Sharing | $ | 16,000 |
| CBA Related | | 3,300 |
| Total Team Shared Revenues | $ | 19,300 |
| Total Revenues | $ | 128,330 |
| Player Salaries | $ | 90,000 |
| Luxury Tax | $ | 8,025 |
| Basketball Ops Salaries | | 11,227 |
| Business Ops Salaries | | 11,264 |
| Employees Benefits and Taxes | | 7,346 |
| Costs of Sales | | 4,838 |
| Costs of Production | | 2,148 |
| Other Expenses | | 14,302 |
| Practice Facility Expenses | | 5,165 |
| Arena Interest | | -- |
| Total Expenses | $ | 154,315 |
| Operating Income | $ | (25,985) |
| Other Expenses | $ | - |
| Net Income | $ | (25,985) |

**No Mechanism**

| | | |
|---|---|---|
| Team Shortfall (Capital Call) | $ | (25,985) |
| Purchaser Responsibility | $ | 1,299 |

**Capital Call Protection Mechanism**

| | | |
|---|---|---|
| Team Shortfall (Capital Call) | $ | (25,985) |
| Cap Overage Adj. | $ | 5,300 |
| Luxury Tax Adj. | $ | 8,025 |
| Adj. Shortfall | $ | (12,660) |
| Purchaser Responsibility | $ | 633 |

**Luxury tax Calculation**

| Amount over Cap | | | $ | 5,300 | | Tax |
|---|---|---|---|---|---|---|
| $0 to $5,000 | $1.50 | | $ | 5,000 | $ | 7,500 |
| $5,000 to $10,000 | $1.75 | | $ | 300 | $ | 525 |
| $10,000 to $15,000 | $2.50 | | $ | - | $ | - |
| $15,000 to $20,000 | $3.25 | | $ | - | $ | - |
| $20,000 to $25,000 | $3.75 | | $ | - | $ | - |
| $25,000 to $30,000 | $4.25 | | $ | - | $ | - |
| $30,000 to $35,000 | $4.75 | | $ | - | $ | - |
| Total Luxury Tax | | | | | $ | 8,025 |

# FOURTH AMENDMENT
## TO
## LIMITED PARTNERSHIP AGREEMENT
### OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

This Fourth Amendment to Limited Partnership Agreement ("***Amendment***") is made to be effective as of August 25, 2017 ("***Effective Date***"), by and among Taylor Sports Group, Inc. a Minnesota corporation (the "***General Partner***"), those persons identified on the signature page hereof under the heading "Limited Partners" (collectively the "***Limited Partners***"), and the Minnesota Timberwolves Basketball Limited Partnership, a Minnesota limited partnership (the "***Partnership***").

## RECITALS

A.   Contemporaneously with the execution of this Amendment, Orbit Sports LLC ("***Orbit***"), William Sexton ("***Sexton***"), Let Me Sleep On It, Inc. ("***LMSOI***"), R. Wynn Kearney, Jr. ("***Kearney***") and the Estate of Phillip Saunders ("***Saunders***", and collectively with Orbit, Sexton, LMSOI and Kearney, the "***LP Purchasers***") purchased additional Limited Partnership Interests from the Partnership (the "***New LP Interests*** "), pursuant to the terms of that certain Partnership Interest Purchase Agreement dated as of August 15, 2017, by and among the Partnership, Orbit, Sexton, LMSOI, Kearny, Saunders, and certain other persons (the "***LP Purchase Agreement***").

B.   Prior to or contemporaneously with the execution of this Amendment, Orbit also has acquired all the limited partnership interests of William F. Bieber and Ralph Burnet (the "***Bieber/Burnet LP Interests***"), pursuant to the terms of that certain Partnership Interest Purchase Agreement between Orbit, William F. Bieber and Ralph Burnet dated as of August 8, 2017 (the "***Orbit Purchase Agreement***").

C.   Immediately following the closing of the transactions under the Orbit Purchase Agreement, the General Partner and the Limited Partners will constitute all of the Partners of the Partnership.

D.   The parties hereto desire to amend the Partnership's Limited Partnership Agreement dated September 28, 1994, as amended by that Amendment to the Limited Partnership Agreement of Minnesota Timberwolves Basketball Limited Partnership dated October 5, 1995, that Second Amendment to the Limited Partnership Agreement of Minnesota Timberwolves Basketball Limited Partnership dated June 17, 2010 and that Third Amendment to the Limited Partnership Agreement of the Minnesota Timberwolves Basketball Limited Partnership dated April 15, 2016 (collectively, the "***Limited Partnership Agreement***").

E.   It is a condition precedent to the closing of the transactions contemplated by the LP Purchase Agreement that the parties hereto enter into this Amendment.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the covenants and agreements contained herein, and for other good and valuable consideration, the parties agree as follows:

1.   <u>Confirmation of Limited Partnership Agreement; Consent</u>.  By executing this Amendment, each of the LP Purchasers is hereby admitted to the Partnership as, and is entitled to the rights and benefits of, a Limited Partner with respect to such LP Purchaser's New LP Interests and Bieber/Burnet LP Interests, and each of the LP Purchasers, hereby agrees to be bound by, and observe all of the terms and conditions of, the Limited Partnership Agreement, as amended, as a Partner with respect to all such Partner's

Partnership Interests (including all Limited Partnership Interests acquired pursuant to the LP Purchase Agreement and the Orbit Purchase Agreement), and hereby makes the representations and warranties (for the benefit of the other Partners and the Partnership), and agrees to comply with the covenants, set forth in the Limited Partnership Agreement, as amended, including those set forth in Section 9.1 of the Limited Partnership Agreement. All of the parties hereto hereby (a) authorize and approve the LP Purchase Agreement and the Orbit Purchase Agreement and the transactions contemplated thereby and consent to the admission of the LP Purchasers as Limited Partners with respect to the New LP Interests and the Bieber/Burnet Interests each acquired pursuant to the LP Purchaser Agreement and the Orbit Purchase Agreement; and (b) waiver any and all transfer restrictions, rights of first refusal, co-sale rights, preemptive rights, notice provisions, time limitations or any other rights such party may have to purchase the New LP Interests and the Bieber/Burnet LP Interests, under the Limited Partnership Agreement or otherwise, with respect to said transfers.

2. <u>Not Capital Call</u>. All of the parties hereto acknowledge and agree that the transactions under the LP Purchase Agreement do not constitute a Capital Call for purposes of Section 5.2 of the Limited Partnership Agreement.

3. <u>Confirmation of Partnership Interests</u>. All the parties hereto agree that as of the Effective Date and following the closing of the transactions under the LP Purchase Agreement and the Orbit Purchaser Agreement, the Partners' Partnership Interests and Percentage Interests shall be as set forth on <u>Exhibit A</u> attached hereto.

4. <u>New Section 5.2(g) General Partner Contribution to Fund Executive Bonuses</u>. The following new Section 5.2(g) is added to the Limited Partnership Agreement:

> "5.2(g) <u>General Partner Contribution to Fund Certain Executive Bonuses</u>. The Partnership and Taylor Sports Group, Inc. ("***TSG***"), the General Partner, are parties to the following deferred compensation agreements (collectively, the "***Bonus Agreements***"): (i) that certain 2016 Deferred Bonus Plan with Rob Moor, dated July 2016; and (ii) that certain Deferred Bonus Plan with Roger Griffith dated February 13, 2017. All payments made by TSG as specified pursuant to the terms the Bonus Agreements shall be treated as a Capital Contribution (the "***Bonus Contributions***"); provided, however, such Bonus Contributions shall not (i) be considered, or treated as made pursuant to, a Capital Call (as defined in Section 5.2(a) hereof) and the provisions of Sections 5.2(a) through (f) shall not apply to such Bonus Contribution; or (ii) result in a change in the Percentage Interests of the Partners."

5. <u>Section 6.3 Allocations of Partnership Income and Loss</u>. The following shall be added to the end of Section 6.3 of the Limited Partnership Agreement:

> "Notwithstanding any contrary provision of this Agreement, any time TSG is treated as making a Bonus Contribution with respect to the Bonus Agreements as provided in Section 5.2(g), then any deduction attributable to such Bonus Agreement shall be specially allocated to TSG to the extent of TSG's Bonus Contribution with respect to such Bonus Agreements."

6. <u>Effect of Amendments</u>. Except as expressly set forth in this Amendment, this Amendment shall not alter, amend or in any way affect any of the terms, conditions, covenants, obligations or agreements contained in the Limited Partnership Agreement, all of which are ratified and affirmed in all respects and shall continue to be in full force and effect.

2

7. <u>Counterparts</u>. This Amendment may be executed in several facsimile or original counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

8. <u>Governing Law</u>. This Amendment shall be governed by, interpreted, and enforced in accordance with the laws of the State of Minnesota.

9. <u>Defined Terms</u>. Capitalized terms used in this Amendment but not defined in this Amendment shall have the meanings set forth in the Limited Partnership Agreement.

10. <u>Exhibits</u>. The exhibits identified in this Amendment are incorporated herein by reference and made a part hereof.

*[End of Page]*
*[Signature Page Follows]*

MINNESOTA/2020529.0081/14861663.8

**SIGNATURE PAGE TO**
**FOURTH AMENDMENT TO**
**LIMITED PARTNERSHIP AGREEMENT OF**
**MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP**

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: Glen Taylor
Title: Chairman
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

By: _____
Name: Thomas A. Vertin
Title: President
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor                   Date

_____
John A. Bollero, Jr.                   Date

_____
R. Wynn Kearney, Jr.          Date

_____
William Sexton                   Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
its Managing Member

By: _____
Name: Lizhang ("John") Jiang
Its: Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

      By: _____
      Name: Glen A. Taylor
      Title: Chairman
      Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

      By: _____
      Name: Thomas A. Vertin
      Title: President
      Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor        Date

_____
R. Wynn Kearney, Jr.        Date

_____
John A. Bollero, Jr.        Date

_William Sexton_ 7-31-17
William Sexton        Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
     its Managing Member

      By: _____
      Name: Lizang ("John") Jiang
      Its: Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

# SIGNATURE PAGE TO
## FOURTH AMENDMENT TO
## LIMITED PARTNERSHIP AGREEMENT OF
## MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: Glen A. Taylor_____
Title: Chairman_____
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor_____
Title: Chairman_____
Date: _____

## LIMITED PARTNERS:

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

By: _____
Name: Thomas A. Vertin_____
Title: President_____
Date: _____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative_____
Date: _____

_____
Glen A. Taylor              Date

_[signature]_ 8-10-2017

_____
R. Wynn Kearney, Jr.        Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach_____
Its: Sole Managing Member_____

_____
John A. Bollero, Jr.          Date

_____
William Sexton               Date

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
     its Managing Member

By: _____
Name: Lizhang ("John") Jiang_____
Its:  Sole Member and President_____

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

**SIGNATURE PAGE TO**
**FOURTH AMENDMENT TO**
**LIMITED PARTNERSHIP AGREEMENT OF**
**MINNESOTA TIMBERWOLVES BASKETBALL LIMITED PARTNERSHIP**

      IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

    By: _____
    Name: Glen A. Taylor
    Title: Chairman
    Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

    By: _____
    Name: Glen A. Taylor
    Title: Chairman
    Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

    By: _____
    Name: Thomas A. Vertin
    Title: President
    Date: _____

Estate of Phillip Saunders

    By: _____
    Name: _____
    Title: Personal Representative
    Date: _____

_____
Glen A. Taylor        Date

_____   8-14-17
John A. Bollero, Jr.        Date

_____
R. Wynn Kearney, Jr.        Date

_____
William Sexton        Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
    its Managing Member

    By: _____
    Name: Lizhang ("John") Jiang
    Its: Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

Estate of Phillip Saunders

By: _____
Name: Thomas A. Vertin
Title: President
Date: _____

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor           Date

_____
John A. Bollero, Jr.           Date

_____
R. Wynn Kearney, Jr.           Date

_____
William Sexton           Date

Orbit Sports LLC

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
    its Managing Member

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

By: _____
Name: Lizhang ("John") Jiang
Its: Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

By: _____
Name: Thomas A. Vertin
Title: President
Date: _____

Estate of Phillip Saunders

By: *Deborah K. Saunders*
Name: *Deborah K. Saunders*
Title: Personal Representative
Date: 8 / 11 / 2015

_____     _____
Glen A. Taylor                Date

_____     _____
John A. Bollero, Jr.          Date

_____     _____
R. Wynn Kearney, Jr.          Date

_____     _____
William Sexton                Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
its Managing Member

By: _____
Name: Lizhang ("John") Jiang
Its:  Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

Estate of Phillip Saunders

By: _____
Name: Thomas A. Vertin
Title: President
Date: _____

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor          Date

_____
John A. Bollero, Jr.          Date

_____
R. Wynn Kearney, Jr.          Date

_____
William Sexton          Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
its Managing Member

By: _____
Name: Lizhang ("John") Jiang
Its: Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: Glen A. Taylor_____
Title: Chairman_____
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor_____
Title: Chairman_____
Date: _____

**LIMITED PARTNERS:**

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Bill & Teri Popp, LLC

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

By: _Thomas A. Vertin_____
Name: Thomas A. Vertin_____
Title: President_____
Date: _8-14-17_____

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative_____
Date: _____

_____
Glen A. Taylor                Date

_____
John A. Bollero, Jr.               Date

_____
R. Wynn Kearney, Jr.            Date

_____
William Sexton                Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach_____
Its: Sole Managing Member_____

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
    its Managing Member

By: _____
Name: Lizhang ("John") Jiang_____
Its: Sole Member and President_____

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

IN WITNESS WHEREOF, the parties have executed this Amendment as of the dates indicated below to be effective on the Effective Date.

MINNESOTA TIMBERWOLVES BASKETBALL
LIMITED PARTNERSHIP
By: Taylor Sports Group, Inc., General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

TAYLOR SPORTS GROUP, INC.,
General Partner

By: _____
Name: Glen A. Taylor
Title: Chairman
Date: _____

## LIMITED PARTNERS:

TAYLOR CORPORATION

By: _____
Name: _____
Title: _____
Date: _____

Let Me Sleep On It, Limited Partnership
By: Let Me Sleep On It, Inc., its General Partner

By: _____
Name: Thomas A. Vertin
Title: President
Date: _____

Bill & Teri Popp, LLC

By: _Bill & Teri Popp, LLC_
Name: _Teri E. Popp_   _Teri E. Popp_
Title: _Co-Principal_
Date: _08-13-17_   _Wm Popp_

Estate of Phillip Saunders

By: _____
Name: _____
Title: Personal Representative
Date: _____

_____
Glen A. Taylor                    Date

_____
R. Wynn Kearney, Jr.              Date

Orbit Sports LLC

By: _____
Name: Meyer Orbach
Its: Sole Managing Member

_____
John A. Bollero, Jr.              Date

_____
William Sexton                    Date

Linsong Sports Development USA, LLC

By: Shanghai Linsong Sports Development, Ltd.,
    its Managing Member

By: _____
Name: Lizhang ("John") Jiang
Its: Sole Member and President

List of Exhibits
Exhibit A – Confirmation of Partnership Interests

## Fourth Amendment
## To
## Limited Partnership Agreement
## of
## Minnesota Timberwolves Basketball Limited Partnership

### Exhibit A

### Confirmation of Partnership Interests

| | Partner | General Partnership Interest | Limited Partnership Interest | Total Partnership Interest (Percentage Interest) |
|---|---|---|---|---|
| 1 | TAYLOR SPORTS GROUP, INC. | 8.242648% | | 8.242648% |
| 2 | TAYLOR CORPORATION | | 44.883280% | 44.883280% |
| 3 | GLEN TAYLOR | | 16.283049% | 16.283049% |
| 4 | BILL & TERI POPP, LLC | | 3.231379% | 3.231379% |
| 5 | JOHN A. BOLLERO, JR | | 0.648725% | 0.648725% |
| 6 | R. WYNN KEARNEY, JR | | 0.910450% | 0.910450% |
| 7 | LET ME SLEEP ON IT, LIMITED PARTNERSHIP | | 1.478230% | 1.478230% |
| 8 | WILLIAM SEXTON | | 2.956450% | 2.956450% |
| 9 | ESTATE OF PHILLIP SAUNDERS | | 0.277170% | 0.277170% |
| 10 | ORBIT SPORTS LLC | | 16.315489% | 16.315489% |
| 11 | LINSONG SPORTS DEVELOPMENT USA, LLC | | 4.773128% | 4.773128% |
| | Totals | 8.242648% | 91.757351% | 100.000000% |