# EXHIBIT E



Michael M. Krauss
Tel 612.259.9712
kraussm@gtlaw.com

VIA EMAIL AND CERTIFIED MAIL, RRR

Gregory W. Jackson, Esq.
Executive Vice President and Chief Legal Officer
1725 Roe Crest Drive
North Mankato, MN 56003
gregory.jackson@taylor.com

Re: Limited Partnership Agreement dated as of September 28, 1994 regarding the Minnesota Timberwolves Basketball Limited Partnership, as amended / Proposed Transaction Involving Alex Rodriguez, Marc Lore and/or Entities Controlled by Them

Dear Mr. Jackson:

This firm has been retained as litigation counsel for Orbit Sports LLC ("*Orbit*") in connection with Orbit's rights, claims and remedies arising under and relating to the Limited Partnership Agreement of the Minnesota Timberwolves Basketball Limited Partnership, effective September 28, 1994, as amended (the "*Partnership Agreement*"). In particular, we represent Orbit in connection with the proposed transaction (the "*Proposed Transaction*") between Glen Taylor, Taylor Sports Group and/or the Taylor Corporation (collectively, the "*Taylor Parties*") and Alex Rodriguez, Marc Lore and/or entities controlled by them (collectively, the "*Announced Buyers*") concerning the Taylor Parties' interests in and with respect to Minnesota Timberwolves Basketball Limited Partnership and affiliated businesses and assets (the "*Timberwolves*"). (Except as otherwise specified below, capitalized terms herein shall have the same meaning as set forth in the Partnership Agreement).

The purpose of this letter is to demand that the Taylor Parties rescind their repudiation of their obligations and Orbit's bargained-for rights under the Partnership Agreement within twenty-four (24) hours by, among other things, delivering copies of the Letter of Intent and definitive agreement with the Announced Buyers to Orbit, failing which Orbit will have no alternative but to proceed as outlined below.

**Greenberg Traurig, LLP | Attorneys at Law**

90 South Seventh Street | Suite 3500 | Minneapolis, Minnesota 55402 | T +1 612.259.9700 | F +1 612.677.3101

Albany. Amsterdam. Atlanta. Austin. Berlin. Boston. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London. Los Angeles. Mexico City. Miami. Milan. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Sacramento. Salt Lake City. San Francisco. Seoul. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv. Tokyo. Warsaw. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¬Greenberg Traurig Germany, LLP; *A separate UK registered legal entity; ⁺Greenberg Traurig, S.C.; ᴮGreenberg Traurig Santa Maria; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ^A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ˜Greenberg Traurig Grzesiak sp.k.

www.gtlaw.com

Gregory W. Jackson, Esq.
May 17, 2021
Page 2

### A. The Partnership Agreement Guarantees Orbit Essential "Tag-Along Rights."

As you know, Orbit is the largest non-Taylor Party limited partner under the Partnership Agreement and, as such, currently holds 17.315489% of the limited partnership interests in the Timberwolves. Before acquiring its initial interests in 2016, Orbit required that the Partnership Agreement be amended to guarantee all limited partners certain rights, known as "Tag-Along Rights," in the event of a Change in Control (as defined in the Agreement). (*See* Partnership Agreement, § 10.7.) The Tag-Along Rights were a pre-condition to Orbit's decision to join the Partnership, under the stewardship of the Taylor Parties, and to infuse it with much-needed capital. Put another way, the Tag-Along Rights were a significant factor in Orbit's decision to invest in the Timberwolves in the first place.

Under Section 10.7 of the Partnership Agreement, if and when the Taylor Parties might *propose* to enter into a "Control Sale" (as defined in the Agreement), all limited partners have the right to participate and sell their own interests in the Partnership. *See* Partnership Agreement, Section 10.7(a) ("[I]n the event that one or more members of the Taylor Group . . . *proposes* to enter into a Control Sale. . ., *then* each Limited Partner (the 'Tag-Along Partners') shall have the right (the 'Tag-Along Right'), to elect to participate in such Tag-Along Sale . . . ") (emphasis added). These "Tag-Along Rights" were, and remain, intended to ensure that no limited partner will be forced to remain in the Partnership without having a say in the identity of the General Partner. These rights are essential where, as here, the Partnership Agreement vests the General Partner with broad discretion to manage the Partnership.

Under Section 10.7 of the Partnership Agreement, the Selling Partner – i.e., the Taylor Parties in connection with the Proposed Transaction – is required to take various actions for the benefit of other partners, including Orbit. The Selling Partner, among other things:

(1) Must give notice of the sale to all limited partners;

(2) Must use commercially reasonable efforts to obtain the agreement of the Prospective Purchaser to allow the participation of limited partners who wish to participate;

(3) Must purchase, at the negotiated price, the interests of any limited partner whose interests are not purchased by the Prospective Purchaser; and

(4) May not proceed with the sale if all limited partners who wish to participate are not allowed to participate at the negotiated price.

Specifically, Section 10.7(b) states that in the event of a Control Sale, the Taylor Parties must provide the limited partners (the "Tag-Along Partners") a "Sale Notice" within ten days of entering into a definitive agreement. The Sale Notice must include a copy of this agreement.

Section 10.7(b) provides in full:

Gregory W. Jackson, Esq.
May 17, 2021
Page 3

> Sale Notice. The Selling Partner shall provide each of the Tag-Along Partners with written notice of the proposed Tag-Along Sale (the "Sale Notice") *within ten (10) days following execution of any definitive agreement (by all the parties thereto) entered into with respect to the Tag-Along Sale*. The Sale Notice shall describe in reasonable detail (i) the Partnership Interests to be sold (directly or indirectly) by the Selling Partner; (ii) the name of the proposed buyer (the "Prospective Purchaser"); (iii) the purchase price and the other material terms and conditions of the sale; (iv) the proposed date, time and location of the closing of the sale; and (v) *copy of the definitive agreement so entered into or if not yet executed any form of agreement proposed to be executed in connection therewith.*

(Partnership Agreement § 10.7(b) (emphasis added).

Upon receipt of the Sale Notice, each limited partner has fifteen days to exercise its Tag-Along Right, by issuing a "Tag-Along Notice" that specifies the Partnership Interests it proposes to sell. (*Id.* § 10.7(c). The Taylor Parties, as the Selling Partner, must "*use commercially reasonable efforts to obtain the agreement of the Prospective Purchaser to the participation of each Electing Partner in such contemplated Tag-Along Sale.*" (Id. § 10.7(d)(i).) Moreover, the Selling Partner "*shall not (directly or indirectly) Transfer any of its Partnership Interests to any Prospective Purchaser pursuant to such Tag-Along Sale* if either (x) such Prospective Purchaser declines to allow the participation of any Electing Partner in accordance with the terms hereof or (y) each Electing Partner that desires to sell all of its Partnership Interests in such sale is not able to do so because of the Maximum Tag Amount, unless in connection with such Tag-Along Sale, the Selling Partner purchases the Partnership Interest from such Electing Partner which such Electing Partner would have been entitled (and elected) to sell pursuant to this Section 10.7, in each case at the same price and on the same terms and conditions on which such Partnership Interests were sold to the Prospective Purchaser." (Emphasis added).

### B.  The Proposed Transaction is a "Control Sale" Triggering Orbit's Tag-Along Rights.

Section 1.7A of the Partnership Agreement defines a "Change in Control" that triggers Tag-Along Rights to include a "Control Sale." Section 1.9C of the Partnership Agreement, in turn, defines "Control Sale" as *"a sale, exchange or other disposition* (for cash or property with a discernible cash value) by one or more members of the Taylor Group, *in a single transaction or series of related transactions*, to any Person who is not a member of the Taylor Group, of Partnership Interests which includes a majority of all the General Partnership Interests (including the indirect sale, exchange or other disposition of such Partnership Interests through the sale, exchange or other disposition (for cash or property with a discernible cash value) of interests in any entity that owns, directly or indirectly, such Partnership Interests)." (Emphasis added).

The Proposed Transaction indisputably constitutes a Control Sale. The Taylor Parties are proposing to sell or otherwise dispose of their Partnership Interests in one or more transactions involving a majority of all General Partnership Interests. In that regard, it is notable that Section 1.9 of the Partnership Agreement encompasses an "exchange or other disposition" – even if not a "sale." In other words, under Section 1.9, a "Control Sale" does not necessarily need to involve

Gregory W. Jackson, Esq.
May 17, 2021
Page 4

a "sale"; an "exchange or other disposition" qualifies, too. Further, even if the Proposed Transaction is structured so the General Partnership Interests are sold or otherwise disposed together at the end, it would still be a sale or other disposition "in a series of transactions of Partnership Interests that includes a majority of General Partnership Interests." Therefore, it is clear that the Taylor Parties have entered into a Control Sale within the meaning encompassed by Section 1.9 of the Partnership Agreement.

The Taylor Parties' own public statements underscore the reality that the Proposed Transaction constitutes a Control Sale. For instance, on May 14, 2021, the Taylor Parties and/or the Timberwolves issued a public statement "regarding the sale and future ownership of the Minnesota Timberwolves and Lynx," which provided in relevant part as follows:

> "Glen Taylor *has reached an agreement* with Marc Lore and Alex Rodriguez regarding *the sale and future ownership* of the Timberwolves and Lynx. *The transaction will close following league approval*, beginning *the transition of ownership* and a new chapter of Minnesota Timberwolves and Lynx basketball."

(Emphasis added.)

The public statement was consistent with Glen Taylor's own description of the Proposed Transaction in an April 12, 2021 email to the limited partners: "I am sure by now you have seen the news regarding the exclusive letter of intent I signed over the weekend with Alex Rodriguez and Marc Lore *to purchase the Timberwolves and Lynx franchises*. As the reports indicate, this agreement is for a 30 day window to negotiate and come to terms on final details. This agreement is structured for me to continue as the controlling partner for 2.5 years, *after which Alex and Marc will take full ownership*." (Emphasis added.)

These statements make clear that the intention of both parties to the Proposed Transaction is to sell control of the Timberwolves, together with their related assets, through the consummation of the Proposed Transaction.

After the May 14, 2021 statement was issued, we understand that you summarized the Proposed Transaction as follows in a conversation with Orbit's transactional counsel: (1) initial 20% limited partner stake sold by Taylor Corporation at the initial closing based on a $1.5 billion enterprise value, subject to adjustment based on outstanding debt and cash at that time; and (2) follow-on options, priced at the same enterprise value and subject to similar adjustments, that can be exercised on each of December 31, 2022, December 31, 2023, and December 31, 2024, at which point the Taylor Parties will have sold all their Partnership Interests, including the General Partnership Interests.

It appears that the Proposed Transaction has been structured as described above in a failed effort to circumvent the Tag-Along Provisions of Section 10.7 of the Partnership Agreement. Orbit anticipated precisely this tactic when it negotiated for the Tag-Along Rights to apply to a "series of related transactions," and not just a "single transaction." Section 10.7 protects against a deal structure that subjects Limited Partners to indeterminate credit risk and may impair value over

Gregory W. Jackson, Esq.
May 17, 2021
Page 5

time, whether due simply to the passage of time, due to the impact of purchase price adjustments, additional debt obligations, changes in tax law, or otherwise. The agreed-upon definition of Control Sale ensures that Tag-Along Partners can exit in full, rather than be forced to assume such risks.

The bottom line is this: As described by you and in the public statement, the Taylor Parties are proposing to enter into a Control Sale under the Partnership Agreement, and thus have triggered the Limited Partners' Tag-Along Rights. The Taylor Parties are proposing to enter into a sale or other disposition of their Partnership Interests in a series of transactions, apparently scheduled through the end of 2024, which includes not just a majority of the General Partnership Interests, but *all* of the General Partnership Interests. To quote the Partnership Agreement, the Proposed Transaction constitutes "a sale, exchange or other disposition . . . in a . . . series of transactions . . . . of Partnership Interests which includes a majority of all the General Partnership Interests."

### C. **The Taylor Parties Have Repudiated their Tag-Along Obligations under Section 10.7.**

Because the Taylor Parties are proposing to enter into a Control Sale, the Proposed Transaction triggers the Taylor Parties' obligations under Section 10.7 with respect to the limited partners' Tag-Along Rights. Indeed, Section 10.7(a) expressly provides that the Tag-Along Rights are triggered "in the event that one or more members of the Taylor Group . . . *proposes* to enter into a Control Sale. . . ." (Emphasis added).

Nonetheless, the Taylor Parties have expressly refused to comply with their contractual obligations. In fact, during your call with transactional counsel, you flatly advised that the Taylor Parties would *not* provide a copy of the definitive agreement for the Proposed Transaction, even though Section 10.7(b) requires them to do so where, as here, a Control Sale is proposed to occur. The Taylor Parties not only are obligated to provide a copy of the definitive agreement for the Proposed Transaction, but also a copy of the Letter of Intent that Mr. Taylor admitted to having signed with the Announced Buyers sometime prior to his email of April 12, 2021 – i.e., more than one month ago.

On May 14, 2021, Orbit issued a "Tag-Along Notice" under Section 10.7(c) of the Partnership Agreement, in which it demanded a copy of the Proposed Transaction's definitive agreement and also gave notice of its election to sell all of its Partnership Interests pursuant to its Tag-Along Rights at the enterprise value of $1.5 billion, as adjusted based on the Partnership's outstanding indebtedness and cash on hand at the time of the closings.

The Taylor Parties have not even acknowledged receipt of the Tag-Along Notice – let alone complied with it. To the contrary, the last statement on behalf of the Taylor Parties regarding Section 10.7 was yours to Orbit's transactional counsel on May 14, 2021: The Taylor Parties will *not* share their purchase agreement with the Announced Buyers with Orbit, nor will the Taylor Parties otherwise honor Orbit's Tag-Along Rights under Section 10.7 at this time.

As you know, an anticipatory breach occurs when a party expressly repudiates the contract, giving notice that he will not perform the contract before performance is due. *See Space Ctr., Inc.*

**Greenberg Traurig, LLP | Attorneys at Law**

www.gtlaw.com

Gregory W. Jackson, Esq.
May 17, 2021
Page 6

*v. 451 Corp.,* 298 N.W.2d 443, 450 (Minn. 1980). Repudiation is "either by words or acts, which is communicated to the other party prior to the time fixed by the contract for his performance." *In re Haugen,* 278 N.W.2d 75, 79 n. 6 (Minn. 1979).

That is exactly what the Taylor Parties have done here. By advising Orbit that they will not share their purchase agreement with the Announced Buyers with Orbit, the Taylor Parties have repudiated their Tag-Along obligations under Section 10.7(b) of the Partnership Agreement and, accordingly, have anticipatorily breached the Partnership Agreement.

The Taylor Parties' actions demonstrate a shocking lack of good faith. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract." *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (quotation omitted). Contrary to their obligations under Minnesota law, the Taylor Parties are, in fact, unjustifiably hindering Orbit's ability to exercise its Tag-Along Rights under Section 10.7 of the Partnership Agreement. In doing so, the Taylor Parties are undermining the very purpose of Section 10.7, and they are depriving Orbit of essential contractual rights that were specifically bargained for when the Taylor Parties sought Orbit's investment in the Timberwolves in the first place. The Tag-Along Rights were included in the Partnership Agreement to prevent the very sort of shenanigans that are now taking place. The Taylor Parties, however, are willfully attempting to circumvent the provisions of the Partnership Agreement in a calculated but futile scheme to vitiate Orbit's Tag-Along Rights.

Fortunately, neither the Partnership Agreement, nor the law of this State, will allow the Taylor Parties to proceed without consequence with respect to the Proposed Transaction in derogation of Orbit's express contractual rights. In fact, Section 10.1 of the Partnership Agreement provides that "*[a] Partner may not Transfer or assign all or any part of such Partner's Partnership Interest except in accordance with this Agreement*." (Emphasis added). Therefore, the Taylor Parties may not proceed with the Proposed Transaction unless and until they have complied with Section 10.7 of the Partnership Agreement by, among other things, honoring and implementing the Tag-Along Rights of Orbit and all other limited partners.

So that the record is abundantly clear, Orbit will not sit idly by while the Taylor Parties ignore Orbit's bargained-for rights. Therefore, demand is hereby made that the Taylor Parties rescind their repudiation of their obligations and Orbit's rights under the Partnership Agreement within twenty-four (24) hours by, among other things, delivering copies of the Letter of Intent and their definitive agreement with the Announced Buyers to Orbit, together with all other information required under Section 10.7 of the Partnership Agreement. Unless the Taylor Parties proceed as outlined above within twenty-four (24) hours of the delivery of this letter to you, time being of the essence, Orbit will seek appropriate relief in a Designated Court, including claims for declaratory, injunctive and monetary relief, in accordance with Section 17.10 of the Partnership Agreement.

Finally, in light of these potential claims against the Taylor Parties, please be reminded that under governing law, the Taylor Parties are required to take all appropriate measures to preserve and safeguard evidence, including electronically stored information, relating to this matter. The duty to preserve potentially relevant evidence is triggered when litigation is reasonably anticipated,

Gregory W. Jackson, Esq.
May 17, 2021
Page 7

which could occur before litigation is filed.  We urge you to immediately inform all of the Taylor Parties' employees, agents or other representatives that they, too, must refrain from deleting or destroying any documents, data and other information that might be relevant to this matter, regardless of any pre-existing document retention policy.  If the Taylor Parties fail to comply with their obligations in this regard, Orbit reserves its right to seek appropriate additional relief, together with other appropriate remedies or sanctions.

Nothing contained in this letter shall be construed to: (i) waive, limit, prejudice or otherwise adversely affect any right, remedy or power at law, in equity or otherwise held by Orbit, all of which rights, remedies and powers are hereby expressly reserved; or (ii) waive any other claims, causes of action and/or breaches by the Taylor Parties of their duties owed to Orbit.

Very truly yours,

*/s/ Michael M. Krauss*

Michael M. Krauss

cc:     Orbit Sports LLC
        Paul H. Schafhauser